STATE of Maine

v.

Edmond H. HEBERT.

Supreme Judicial Court of Maine.

Argued Nov. 17, 1982.

Decided Feb. 1, 1983.

Janet T. Mills, Dist. Atty., Geoffrey Rushlau, Asst. Dist. Atty. (orally), Auburn, for plaintiff.

Ronald P. Lebel (orally), Rocheleau, Fournier & Lebel, P.A., Lewiston, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

CARTER, Justice.

After a trial in Superior Court (Androscoggin County), the jury found the defendant guilty of Gross Sexual Misconduct, 17–A M.R.S.A. § 253 (1982). Because we find that the justice's refusal to comply with the jurors' request to read back a portion of the testimony constitutes reversible error in the trial proceedings, we vacate the conviction.

The prosecutrix, the defendant's nine-year-old daughter, offered testimony that suggested that her father had abused her sexually on at least two occasions. During her testimony, the prosecutrix used one male and one female anatomically correct doll to demonstrate what had occurred between her father and her.

She testified that one day, when her mother was at the store and her brother and sister were outside, the defendant took her to his bedroom. She stated that her father was nude and that she removed her pants. At that point in her testimony, the prosecutor gave her the dolls. After removing the dolls' clothes, the prosecutrix described the incident in the bedroom as follows:

Q. You did. Okay. So where on your body did your daddy touch you?

A. There.

Q. Right between your legs?

A. Yes.

Q. Okay. Now, you said this is a boy doll?

A. Yes.

Q. Could you show what part of the body your daddy touched you with?

A. That part.

Q. Okay. Why don't you take the clothes off.

(The witness takes the clothes off the doll.)

Q. So you've taken all the clothes off the boy doll?

A. (Witness nods in the affirmative.)

Q. Is this the way your daddy was?

A. Yes.

Q. Which part of his body did he touch you with?

A. Yes.

Q. Did you have a part that looks like that on your body?

A. No.

Q. Boys just have that?

A. Yes.

Q. And where did he touch you with that?

A. Right there.

Q. Okay. Could you show, with the dolls, how he touched you?

A. Like that.

Q. Face to face?

A. Yes.

Q. And how long was he touching you like that?

A. Not very short.

Q. Was it just a few seconds, or a few minutes?

A. A few minutes, probably.

Q. And you said it was in the bedroom?

A. Yes.

Q. Was it on the bed?

A. Yes.

Q. What did it feel like when that happened?

A. It hurted.

\* \* \* \* \* \*

Q. Okay. Now, did anything ever happen to you after that from that part of your body?

A. No.

Q. Did you ever have any injury or anything like that? Did it bleed?

A. Yes.

\* \* \* \* \* \*

Q. Did your daddy ever touch you with anything besides the part you pointed out?

A. Yes.

Q. What did he touch you with?

A. His fingers and his, his finger and his tongue.

The prosecutrix testified that she had subsequently bled from "that part of her body"; some of the blood went into the toilet and some stained her underwear. The prosecutrix's mother testified that she had found very dark brown stains over the crotch of the prosecutrix's underwear. The prosecutrix's brother, Charlie, testified that on one particular day when their mother was shopping, he and his sister, Cindy, were locked out of their house while their father and sister, the prosecutrix, were inside. Charlie confirmed the prosecutrix's testimony that she had told him about the incident. He testified that the prosecutrix told him that the defendant "did something to her," "that it hurt," and "that she'd bled."

A pediatrician examined the prosecutrix more than two weeks after the incident. He testified that her condition could have been consistent either with sexual activity or with no sexual activity. His diagnosis of sexual activity depended "a lot" on the prosecutrix's statements to him. He testified that if he had examined her without having talked to her, he would not have noticed anything unusual in her vaginal area.

The defendant testified that he had never sexually abused or molested his daughter. He denied ever having touched his daughter's vagina with any part of his body.

During its deliberations, the jury requested to rehear a portion of the defendant's testimony and to be reinstructed concerning the credibility of witnesses. The presiding

justice reread his instructions concerning credibility but refused to reread any testimony. After deliberating one-half hour longer, the jury returned a verdict of guilty. The justice sentenced the defendant to twenty years in the Maine State Prison.

### Sufficiency of the Record

The indictment charged the defendant with violation of 17–A M.R.S.A. § 253(1)(B) (1982), engaging in a sexual act with a person, not his spouse, who has not in fact attained his fourteenth birthday. Section 251(1)(C) defines sexual act:

> "Sexual act" means any act of sexual gratification between 2 persons involving direct physical contact between the sex organs of one and the mouth or anus of the other or direct physical contact between the sex organs of one and the sex organs of the other, or direct physical contact between the sex organs of one and an instrument or device manipulated by the other. A sexual act may be proved without allegation of proof of penetration.

17–A M.R.S.A. § 251(1)(C) (1982).

The defendant contends correctly that although the prosecutrix's demonstration and testimony with the dolls may or may not have established the occurrence of a sexual act between her and her father, this Court must confine its review to the record before it. The defendant concludes, therefore, that "the failure to protect the record with a careful narration of the demonstration must inure to the detriment of the State whose burden it is to prove guilt." Although we disagree, we believe that, under the particular circumstances of this case, the defendant's contention merits discussion.

Well-established authority in Maine and elsewhere [1] places the burden of providing a sufficient record for appellate review on the appellant. *State v. Wilson,* 409 A.2d 226, 229 (Me.1979) (failure to include counsel's closing argument in record); *State v. Howard,* 405 A.2d 206, 208 (Me.1979) (failure to include record of grand jury proceedings); *State v. Desjardins,* 401 A.2d 165, 168 (Me.1979) (failure to include motion to suppress or suppression court's decision); *State v. Lang,* 396 A.2d 1012, 1013 (Me.1979) (failure to include record of prior trial to substantiate claim of juror prejudice); *Nadeau v. State,* 395 A.2d 107, 115 (Me.1978) (failure to include complaint and answer in record); *State v. Smith,* 389 A.2d 314, 315 n. 1 (Me.1978) (failure to correct omission in record); *Berry v. Berry,* 388 A.2d 108, 109–10 (Me.1978) (failure to include motion to dismiss).

We note further that this authority involves more than a technical duty to document the procedural history of a case on appeal. The task of preserving the substantive proof adduced at trial has, in the past, been similarly placed on the party challenging the result of the trial. In *State v. Bellanceau,* 367 A.2d 1034, 1036–38 (Me. 1977), the State's witness, a detective, offered the only testimony concerning the defendant's constructive presence at the robbery, a necessary element of criminal liability as a principal to the crime. The Court agreed that on the appellate record, it was difficult to understand where the detective was positioned or how he could have observed the defendant. The Court nevertheless ruled that the defendant-appellant had failed in his burden of bringing

1. *State v. Jones,* 167 Conn. 228, 234, 355 A.2d 95, 98–99 (1974) (defendant did not communicate to court, on the record, the point urged on appeal); *Commonwealth v. Hall,* 369 Mass. 715, 734, 343 N.E.2d 388, 399 (1976) (failure to include disputed documents in record sent to appellate court); *Commonwealth v. Tatro,* 4 Mass.App. 295, 346 N.E.2d 724, 726 (1976) (appellant failed to include challenged jury list in record); *Jackson v. State,* 514 S.W.2d 532, 533 (Mo.1974) (appellant has duty to see that transcript delivered to appellate court is complete and to correct reporter's omission); *State v. Parks,* 20 N.C.App. 207, 208, 200 S.E.2d 837, 838 (1973) (appellant's duty to have record show court's jurisdiction); *Dart v. State,* 515 S.W.2d 119, 121–22 (Tex.Cr.App.1974) (appellant's duty to ensure that court reporter includes desired statement of facts in record).

forward an adequate appellate record. The Court noted:

> The appellant could have easily had the "chalk" photographed, admitted as an exhibit, and reproduced for our inspection on appeal. This was his responsibility and, with this assistance, the testimony would certainly have been more meaningful.
>
> We recognize, however, that the jury was not confronted by a sterile record but had the advantage of observing the officer use the diagram to illustrate what he was referring to when he used the words "here" and "there." We cannot say that the jury, being thus advantaged, was unable to comprehend and evaluate the officer's testimony.

*Bellanceau,* 367 A.2d at 1038.

■ The record in the present case is disquieting because, in the absence of any verbal recitation of what the prosecutrix demonstrated through the use of the dolls, we have no certain understanding of the information conveyed to the jury by those demonstrations. The record is not, however, so sterile when read in its entirety and with a common-sense understanding as to preclude meaningful judicial review. A fair reading of the record supports the conclusion that the defendant touched the prosecutrix between her legs with a part of his body "that only boys have." The prosecutrix stated that this touching hurt and that she bled from the part of her body that was touched in the incident. Her mother corroborated the testimony that the prosecutrix's blood stained the crotch of her underwear. On the basis of *this record,* we conclude that the jury was warranted in finding, from the evidence before it, that the defendant had engaged in a sexual act with his daughter by touching her vagina with his penis, finger, and tongue.

■ We would offer, however, a word of caution to future litigants contemplating the use of such demonstrative evidence.

The determination of appellant status is never made until the trial transcript is complete. To delegate to one's opposing party, during trial, the responsibility for making a record adequate for appeal is a risk-laden trial strategy, which serves no worthwhile purpose. Further, to the extent that one's opponent declines to perform that task or is so inept at doing so that the record is silent concerning what information was demonstratively conveyed to the jury by witnesses and we can not deduce that information from the spoken words contained in the printed record and from well-proved facts, unlike the case here, this Court will not supply the missing facts necessary to prove the elements of a criminal offense by the exercise of its own imagination.

As in *Bellanceau,* we, too, recognize that the jury has the advantage of observing the in-court demonstration. Unlike *Bellanceau,* however, the record here is sufficient so that we need not take it entirely on trust that the demonstration conveyed the requisite data to meet the applicable standard of proof.

### Jurors' Request

■ After two and one-half hours of deliberation, the jurors requested a reading of the defendant's testimony on cross-examination[2] and reinstruction regarding the credibility of witnesses. In chambers, before responding to the jurors' request, the trial justice informed counsel that he would read back the portion of his charge concerning credibility but he would not comply with the request to hear the defendant's testimony. Defense counsel objected and moved for a mistrial on the basis that the jury has the right to hear the testimony reread. The justice noted that his decision not to read back the testimony was within his discretion and denied the motion.

The justice called the jury in and reread his charge concerning credibility. With re-

**2.** The jurors' question read: "The jury would like to hear Edmond Hebert's testimony from the prosecutor's question."

gard to the jurors' second request to rehear the defendant's testimony on cross-examination, the justice informed the jurors:

It is not my practice to have the court reporter read back the testimony and portions of testimony. My reason for this is that there are twelve of you who have a collective memory as to what a witness testified to, and it is your collective memory as to what this particular piece of testimony was or was not. I want you to return to resume your deliberations with this additional point. If your collective memory fails entirely as to the testimony of Edmond Hebert from the prosecutor's questions, you may then renew your request and I will give it further consideration. I am not saying that I will have the testimony of Edmond Hebert read back in whole or in part, I am only saying that if your collective memory fails completely in this regard, you may renew your request at that time and I will give it further consideration.

With that, Mr. Foreman and ladies and gentlemen of the jury, you may resume your deliberations.

One-half hour later, the jury returned a verdict of guilty.

We deal here with preserved error; the defendant made the court sufficiently aware of the essence of his objection. *See State v. Lewisohn,* 379 A.2d 1192, 1205 (Me. 1977). We are not required to determine only if the justice's "practice" deprived the defendant of a fair trial. M.R.Crim.P., Rule 52(b); *State v. Gaudette,* 431 A.2d 31, 33 (Me.1981); *State v. Cugliata,* 372 A.2d 1019, 1034 (Me.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

■ The justice was correct in ruling that the decision to read back testimony at the jurors' request is within the justice's discretion. Title 14 M.R.S.A. § 1106 (1980) provides:

Disagreement in jury; instructions

When a jury, not having agreed, returns into court stating the fact, the justice may, in his discretion, explain any questions of law if proposed to him or restate any particular testimony and send them out again for further consideration. They shall not be sent out a 3rd time in consequence of their disagreement unless on account of difficulties not stated when they first came into court.

*See also State v. Saucier,* 385 A.2d 44, 48 (Me.1978) ("trial justice may grant a request by the jury that portions of the record be read back to them"); *State v. MacDonald,* 382 A.2d 553, 554 (Me.1978) (no abuse of discretion in rereading only direct examination testimony); *State v. Vallee,* 137 Me. 311, 315, 19 A.2d 429, 431 (1941) (rereading of testimony left to "sound discretion" of presiding justice).

■ We are far from suggesting that mandatory compliance with every request for a rereading of testimony is required. The particular circumstances of a case govern such a decision and the matter lies within the sound discretion of the trial justice. But we think that the discretionary denial of a jury's request to rehear testimony should be strictly limited by a test of reasonableness. That discretion must be brought to bear on the facts of each case; a refusal as a matter of practice or routine to entertain a request to have testimony read back will almost always constitute an abuse of the required discretion. The American Bar Association Standards for Criminal Justice provide a practical and equitable approach to this issue:

Standard 15–4.2. Jury request to review evidence

(a) If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom. Whenever the *jury's request is reasonable,* the court, after notice to the prosecutor and counsel for the defense, *shall* have the requested parts of the testimony read to the jury and shall permit the jury to reexamine the requested materials admitted into evidence.

American Bar Association, *Standards for Criminal Justice,* § 15–4.2(a) (1980) and Commentary at 124 (emphasis added).

In determining the reasonableness of the jury's request, the following factors, among others, may be significant: (1) the length of the trial; (2) the complexity of the issues; (3) the number of witnesses; (4) the amount of testimony requested to be reread;[3] (5) the amount of other testimony that, in fairness to all parties, should be reread with the requested read back;[4] (6) the importance of the requested testimony;[5] and (7) the inconvenience and loss of time to the court that may result. In balancing these factors, however, the trial justice should bear in mind that the preferable practice when the jury desires refreshment of memory is to grant the jury *the right* to have the testimony reread in open court. *See State v. Sutkus,* 134 Me. 100, 103, 182 A. 15, 16 (1935). Where a close judgment call is required, a justice should err on the side of responding favorably to a reasonable jury request. Evidence not requested should be reviewed, in order to comply with the actual request and in order not to give undue prominence to the requested evidence. The convenience of the court should not be pursued at the cost of keeping the jurors confused. *Standards for Criminal Justice* § 15–4.2, Commentary at 126.

The present case involved a three-day trial. The several elements of the serious charge of gross sexual misconduct, the burden of proof issue in a criminal case, and a well-substantiated defense theory rendered this litigation fairly complex. Eleven witnesses testified. The cross-examination of the defendant, which the jurors requested to be read back, consisted of less than six transcript pages.[6] The testimony in those pages, if believed by the jury, focused on factual aspects of the case that were strongly exculpatory of the defendant. Hence, a failure to read back that testimony at the jury's request, resulting from an abuse of discretion, has a high potential for harm to the defendant at the deliberative stage of the case. It does not appear that the justice would have had to include, on the basis of fairness or relevance, other testimony as a consequence of reading back this testimony.

We understand that the justice's practice of refusing to read back testimony results from a good faith reliance on, and emphasis of, the collective memory of the jurors. The trial justice's insistence that there be a *complete* failure of the jurors' collective memory imposed an improper standard, which peremptorily cut off the proper exercise of his discretion without any consideration of those factors we have enumerated as bearing on a proper rational process. The justice instructed the jurors that "you are

---

**3.** *United States v. Bassler,* 651 F.2d 600, 604 (1981), *cert. denied,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 254, *reh'g denied,* 454 U.S. 1129, 102 S.Ct. 983, 71 L.Ed.2d 118 (1981) (failure to comply with jurors' request for transcript of ten days of testimony not abuse of discretion).

**4.** There is no requirement that *both* direct and cross-examination testimony be read back even if only one is requested. That is another decision that is within the justice's discretion on all the facts of the case. *Vallee,* 137 Me. at 315, 19 A.2d at 431. There is, further, no abuse of discretion if the justice reads back testimony that is detrimental to the defendant. *Saucier,* 385 A.2d at 48.

**5.** Failure to grant a request to review evidence directly relating to an issue before the jury has been held an abuse of discretion. *See United States v. Jackson,* 257 F.2d 41, 43 (3d Cir. 1958) (under circumstances of case, defendant entitled to have jury hear testimony as a matter of right); *LaMonte v. State,* 145 So.2d 889, 893

(Fla.App.1962) (court's refusal to read to jury testimony about material issue connecting defendant to crime fundamental error). A trial justice should have discretion to avoid review of matters in evidence but irrelevant to issues before the jury. *Standards for Criminal Justice,* § 15–4.2, Commentary at 125.

**6.** The substance of the defendant's testimony on cross-examination involved his description of his marital difficulties and subsequent divorce and his total and emphatic denial that he had ever sexually abused his daughter. The defendant also stated that his family often locked the front door because the neighbors' children often used that door. The cellar door was, however, always unlocked and the defendant's children knew that. This particular testimony addressed the claim by the prosecutrix's brother, Charlie, that the defendant had locked him and Cindy out of the house during the alleged incident.

the judges of the facts, just as I am the judge of the law." Yet, by reinstructing them only concerning the law, the justice's "practice" mandates that the jurors *guess* at, rather than judge, the facts. The trial justice's "practice" of refusing to read back testimony seems, to us, only to augment the negative aspects of the jurors' already difficult task. Further, it implies a refusal by the court to exercise meaningfully the discretion entrusted to it.

The parties' interests are too substantial, the jurors' task is too important, and the court's inconvenience is too slight in this case to justify a refusal of the reasonable request for rereading of a concise bit of testimony. In the absence of some weighty counterbalancing factor showing a clear danger of substantial and unjustifiable prolongation of the proceeding or of prejudice to a party, we can not approve of any practice that promotes the risk of a jury's finding facts without an adequate knowledge of the evidence.

The entry is

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with this opinion.

All concurring.