**STATE of Maine**

v.

**Nelson SPEARIN.**

Supreme Judicial Court of Maine.

Argued June 15, 1983.

Decided July 29, 1983.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Steven C. Fletcher (orally), Rockland, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS and WATHEN, JJ., and DU-FRESNE, A.R.J.

WATHEN, Justice.

After a jury trial in Superior Court (Penobscot County), defendant was convicted of arson with the intent to collect insurance proceeds. 17-A M.R.S.A. § 802(1)(B)(1) (1983). On appeal, he argues that: (1) the court erred in admitting evidence of defendant's submission of a claim for insurance proceeds, (2) the prosecutor made inappropriate comments during final argument, and (3) the evidence was insufficient to establish guilt beyond a reasonable doubt. We deny the appeal.

The facts of this case may be summarized as follows: Defendant's house burned on May 24, 1978. Defendant reported the fire to the Lincoln Fire Station, claiming to have heard an explosion.

Fire Chief David Smart was the first person to enter the building after the fire was extinguished. The fire had been confined to the northwest portion of the house. Upon entering defendant's house, Smart found a "copy of the arson laws by the insurance commission." At that time, defendant appeared calm and coherent. Smart saw no evidence of a furnace explosion.

Fire Inspector John Stevens investigated the fire scene that next morning. By analyzing the "burn patterns" and the depth of char, he isolated the point of origin of the fire and concluded that the burn pattern was consistent with the use of an accelerant. There was no evidence to support a theory that the fire was electrical in origin. The furnace was also ruled out as a causative factor. Having found nothing to indicate an accidental fire, he concluded that the fire was intentionally set.

Defendant reported the fire loss to his insurance carrier on the day of the fire. He had in his possession at that time the original policy. Defendant appeared "agitated and excited" and was concerned about collecting on his policy as soon as possible.

Approximately one week after the fire, defendant submitted to an insurance adjuster a bundle of receipts for recently purchased building materials and furnishings which he claimed to have been lost in the fire. Approximately three months after the fire defendant met with the adjuster and told him that he was in dire need of money and needed to have his claim settled. The adjuster remarked that he thought defendant had set the fire, to which defendant responded: "I know but you can't prove it."

The evidence also revealed that some months before the fire, defendant was heard to say that a "red horse was going to go through that place the first time the fire truck was out of town." Also prior to the fire, defendant had expended considerable effort and money fixing up his house "to increase its insurance value." Various items seen affixed to or in defendant's house prior to the fire appeared to be missing subsequent to the fire. It was established that defendant had sold various building materials and furnishings prior to the fire. Many of those items fit the description of those purchased by defendant and included in his claim for fire loss.

I.

The first issue on appeal results from the fact that the defendant was tried twice and had previously been acquitted of a companion charge. Defendant was originally indicted and tried for making a false claim for insurance proceeds (24–A M.R.S.A. § 2178 (1974)) as well as for arson (17–A M.R.S.A. § 802 (1983)). At the conclusion of the first trial, defendant was found guilty of arson. The court entered a judgment of acquittal on the false claim charge. After that first trial, a new trial on the arson charge was granted and it is that retrial which is now before us.

Defendant argues that the presiding justice erred in admitting evidence of defendant's submission of a claim for insurance proceeds, including purchase receipts and a 13-page inventory of personal property submitted by defendant in support of his claim. Before the second trial, defendant moved in limine to exclude from evidence any reference to that portion of his claim which the State had previously alleged to be false. It was defendant's position that because he was acquitted of making a false claim at his first trial, the State was collaterally estopped from presenting any evidence of such claims at his second trial. At trial, defendant also objected on grounds of relevance to the introduction of evidence of the allegedly false claim. The court denied his pre-trial motion, overruled his objection and allowed evidence of the claim to be introduced. We conclude that the court did not thereby commit error.

*Collateral Estoppel*

The leading case on the applicability of collateral estoppel to criminal prosecutions is *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct.

1189, 25 L.Ed.2d 469 (1970). In *Ashe,* the United States Supreme Court held that collateral estoppel is a protection embodied in the Fifth Amendment guarantee against double jeopardy and that "when a [sic] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. The Court noted that the rule of collateral estoppel in criminal cases is "not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* at 444, 90 S.Ct. at 1194. The Court stated that when a previous judgment of acquittal is based upon a general verdict, in order to determine what issues of fact were necessarily resolved at the first trial, the reviewing court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.*

In applying the rule of *Ashe,* this Court has held that "the doctrine of collateral estoppel provides that a defendant cannot be convicted of a second offense after being acquitted of a first offense if such acquittal necessarily resulted in a factual finding favorable to the Defendant on an element essential to the second offense." *State v. Williams,* 395 A.2d 1158, 1168 (Me.1978). We went on to add, however, that "[w]here there was never a factual finding favorable to the Defendant, the rule simply has no applicability." *Id.* In the present case, an acquittal was granted by the trial justice prior to submission to the jury. The record of the first trial includes no factual findings nor does it reflect the trial justice's reasoning in granting defendant's motion. Since the falsity of defendant's claim was not necessarily determined at the first trial, collateral estoppel did not bar relitigation of that fact in the second trial.[1] *See, e.g., United States v. Henry,* 661 F.2d 894, 897–98 (5th Cir.1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982).

*Relevance*

Relying on *State v. Leathers,* 407 A.2d 15, 18 (Me.1979), defendant argues that even if the State was not collaterally estopped from introducing evidence relating to his submission of false claims, that evidence was nevertheless irrelevant. Alternatively, defendant argues that any probative value was substantially outweighed by the likely prejudicial impact of that evidence.

In *Leathers,* we held to be irrelevant, on the issue of whether a defendant set a fire, the fact that a defendant may have exaggerated the value of property lost in the fire. In the present case, the State argues that defendant's removal of property before the fire and his inclusion of that property in his insurance claim after the fire is relevant and tends to establish a plan consistent with an intent to commit arson as charged. The trial justice agreed, ruling that such evidence was admissible. In addition, the trial justice found that the probative value outweighed any prejudice which might result from the admission of the evidence. He did, however, consistent with *Leathers,* exclude any evidence of inflated values.

■ It is well established that determinations of relevance are within the discretion of the presiding justice and will not be overturned absent an abuse of that discre-

1. We are not required to resolve the further issue of whether the doctrine of collateral estoppel bars the *evidentiary* use of matters previously determined or applies only in situations of reprosecution with respect to the determination of ultimate facts. *Ashe* presented only the latter situation. *See United States v. DeVincent,* 632 F.2d 155, 159 (1st Cir.1980), *cert. denied,* 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981); *Oliphant v. Koehler,* 594 F.2d 547, 554–55 (6th Cir.), *cert. denied,* 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979); *United States v. Kills Plenty,* 466 F.2d 240, 243 (8th Cir.1972), *cert. denied,* 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973): *But see also United States v. De La Torre,* 639 F.2d 245, 248 (5th Cir.1981); *United States v. Keller,* 624 F.2d 1154, 1158–60 (3d Cir.1980); *United States v. Mespoulede,* 597 F.2d 329, 334–35 (2d Cir. 1979).

tion. We discern no abuse. Unlike the evidence of exaggerated values in *Leathers,* evidence of misrepresentations made in this case by defendant in his claim for insurance proceeds taken in conjunction with evidence of his removal or sale of seemingly identical items prior to the fire is highly relevant in establishing the requisite intent. Although evidence of such misrepresentations is indeed prejudicial to defendant's case, we do not agree that the presiding justice abused his discretion in concluding that such prejudice was substantially outweighed by the probative value of that evidence.

## II.

 Defendant contends on appeal for the first time that a remark made by the prosecutor during final argument constitutes reversible error. In rebuttal the prosecutor referred to defense counsel's argument as the "I know it, but you can't prove it" defense. Since defendant made no objection at trial, the alleged impropriety constitutes a basis for vacating the criminal judgment only if it is obvious and worked a manifest injustice upon defendant. *State v. Smith,* 455 A.2d 428, 430 (Me.1983). We need not decide, however, whether the statement at issue is in fact improper, because in any event it does not constitute obvious error. The remark was responsive to defense counsel's argument and did not transgress the domain of facts in evidence.

## III.

Defendant's final contention is that there was insufficient evidence to support the finding of guilt.

It is well established that a criminal conviction will not be set aside unless no trier of fact could rationally find proof of guilt beyond a reasonable doubt. *State v. Henderson,* 435 A.2d 1106, 1108 (Me.1981). A conviction based on circumstantial evidence is not for that reason any less conclusive. *State v. McKenney,* 459 A.2d 1093, 1096 (Me.1983).

Defendant argues that the investigation conducted by the fire inspector was flawed and inconclusive. Although there is room to question the inspector's conclusions, such questions go to the weight of the evidence and not to its sufficiency. Sufficient evidence existed to support the verdict.

The entry is:

Judgment of conviction affirmed.

All concurring.