STATE of Maine

v.

**Edmond H. HEBERT.**

Supreme Judicial Court of Maine.

Argued May 11, 1984.

Decided July 2, 1984.

Janet T. Mills, Dist. Atty. (orally), Auburn, for plaintiff.

Rocheleau, Fournier & Lebel, P.A. by Ronald P. Lebel (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, Edmond H. Hebert, appeals from a judgment of conviction entered by the Superior Court, Androscoggin County, after a jury found him guilty of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(B) (1983).[1] On appeal, Hebert challenges several evidentiary rulings made by the presiding justice, and contends that during closing argument, the prosecutor improperly appealed to the sympathy of the jury. Finding no reversible error, we affirm the judgment.

On January 12, 1981, an Androscoggin County grand jury returned an indictment charging that at some time between January, 1980, and August, 1980, Edmond H. Hebert engaged in a sexual act with his daughter, Christina, who had not yet attained her fourteenth birthday.[2] At trial, the prosecution's case centered on the testimony of Christina, her mother and brother, and a pediatrician. Christina testified that during the spring and summer of 1980, the defendant, on more than one occasion, had "put his dink up [her] crack," and as a result she had bled onto her underwear. Sharon Hebert, Christina's mother, testified that in the spring of 1980 she on several occasions had noticed brown stains on her daughter's underwear, but had been unaware the stains might be blood.[3] Over defense counsel's objection, Charles Hebert, Christina's brother, testified that Christina told him on several occasions dur-

---

1. Hebert was originally tried and convicted in June, 1982. That conviction was vacated for reasons not related to the instant appeal. *See State v. Hebert,* 455 A.2d 925 (Me.1983).

2. A person is guilty of Class A gross sexual misconduct if "he engages in a sexual act with another person, not his spouse, and ... [t]he other person has not in fact attained his 14th birthday...." 17–A M.R.S.A. § 253(1)(B) (1983). A "sexual act" is "any act of sexual gratification between 2 persons involving direct physical contact between the sex organs of one

and the mouth or anus of the other or direct physical contact between the sex organs of one and the sex organs of the other...." 17–A M.R.S.A. § 251(1)(C) (1983). Actual penetration need not be alleged or proved to show a sexual act. *Id.*

3. Mrs. Hebert testified she was not aware of the sexual activity until after she and her husband separated in August, 1980, and her son informed her that Christina told him their father had sexually abused her.

ing the spring and summer of 1980 that their father had hurt her, and she had bled as a result.[4] Finally, the prosecution offered the testimony of pediatrician James MacMahon, who examined Christina in September, 1980, after Sharon Hebert became aware of the alleged sexual activity. Dr. MacMahon testified Christina told him she had engaged in sexual activity with an adult. Dr. MacMahon stated he found Christina's hymen to be slightly stretched and ragged, and slightly larger than normal for a child her age. Further, her introitus (the area outside the hymen) was slightly enlarged and appeared to be somewhat bigger than usual for girls of Christina's age. Although Dr. MacMahon stated these conditions were consistent with penetration or attempted penetration, and in his opinion sexual activity had taken place, he stated the medical conditions were not conclusive, and were also consistent with sexual inactivity. Thereafter, defense counsel moved the court to strike the testimony of Dr. MacMahon. The defendant argued that the doctor's opinion was based not on his physical examination of Christina Hebert, but on the statement made to him by Christina that she had engaged in sexual activity with an adult.[5] The motion was denied. At the close of the state's evidence, the defendant moved for a judgment of acquittal on the basis of the insufficiency of the evidence. This motion was also denied.

Over objection, Dr. Conrad Wurtz, a psychologist, testified on behalf of the defendant that as a result of interviews with and testing of the defendant, it was his opinion there was little probability the defendant committed the act with which he was charged.[6] During cross-examination, Dr. Wurtz was asked whether he was aware that the defendant had not slept with his wife for some time prior to their separation in August, 1980. The defendant objected and moved for a mistrial on the basis there was no evidence in the record to support the information contained in the prosecutor's questions. The court ordered the questions and answers stricken from the record and instructed the jury accordingly, but denied the motion for a mistrial.

During the direct examination of defense witness Doris Leonard, the court sustained the prosecutor's objection to defense counsel's attempted inquiry into whether the defendant or his wife had been the aggressor in physical confrontations between them. Previously, Mary Hebert, the defendant's sister-in-law, had testified on behalf of the defendant that Sharon Hebert was usually the aggressor in such physical confrontations.[7] The jury returned a guilty verdict, and this appeal followed.

I. Denial of the motion for acquittal

■ When an improper denial of a motion to acquit is alleged, the question for this court is whether there was legally sufficient evidence to support the guilty verdict. *State v. Duquette,* 475 A.2d 1145 at 1147 (Me. May 24, 1984); *State v. Millett,* 392 A.2d 521, 523 (Me.1978); *State v. Burnham,* 350 A.2d 577, 582 (Me.1976). Evidence is legally sufficient when a trier of fact, resolving all discrepancies in the evidence in favor of the state, rationally could find the essential elements of the offense charged beyond a reasonable doubt. *See State v. Snow,* 464 A.2d 958, 961 (Me. 1983); *State v. Spearin,* 463 A.2d 727, 731 (Me.1983). The defendant contends that

---

4. Both children testified they did not tell their mother until the Heberts separated because of fear of their father.

5. Dr. MacMahon conceded his opinion was based in significant part on Christina's statement to him that she had engaged in sexual activity.

6. The prosecution argued that the testimony of Dr. Wurtz was impermissibly speculative. We

intimate no opinion as to the propriety of the presiding justice's decision to allow Dr. Wurtz to testify as to the psychological probability of the defendant committing the offense charged.

7. At the close of all the evidence, defense counsel renewed his motion for judgment of acquittal. The motion was denied. Subsequent to the return of the guilty verdict, the defendant requested and was denied a new trial.

the testimony of Christina Hebert was not sufficiently definite for the jury to conclude that the defendant had made the proscribed contact with her sex organs.

 The defendant's contention is lacking in merit. Christina Hebert testified that she would comply with her father's request to go to his bedroom and take off her clothes, and her father would take off his clothes and "put his dink up [her] crack" while she remained undressed. Further, Christina explained that when she referred to "dink," she was referring to something boys have and girls do not, and that her "crack" is the part between her legs. Finally, Christina testified she bled as a result of her father's actions. To obtain a conviction for gross sexual contact with one under fourteen years of age and not the spouse of the defendant, the prosecution need not prove penetration, but only that direct physical contact between the sex organs has occurred. See 17–A M.R. S.A. §§ 251, 253; see also State v. True, 438 A.2d 460, 471 (Me.1981) (testimony of victim may be sufficient to support rape conviction). The testimony of Christina Hebert, together with the corroborating testimony, was clearly sufficient to support the jury's finding that a sexual act between the defendant and Christina had taken place.

II. Testimony of Charles Hebert relating to prior consistent statements of Christina

 In recent years, this court has had several opportunities to address the admissibility of out-of-court statements tending to corroborate a witness's testimony attacked at trial as having been recently fabricated or unduly influenced. These cases have made clear that for a prior consistent statement to be admissible a proponent must establish: (1) it is consistent with the witness's in-court testimony; (2) it is offered not as substantive proof of the matter asserted therein but to rebut an express or implied charge of recent fabrication of the testimony or improper influence

or motive; and (3) the statement was made prior to the time the supposed motive to falsify arose. See State v. Fredette, 462 A.2d 17, 22–23 (Me.1983); State v. Zinck, 457 A.2d 422, 425–26 (Me.1983); State v. Reilly, 446 A.2d 1125, 1130 (Me.1982); State v. True, 438 A.2d at 465, 466; State v. Lizotte, 249 A.2d 874, 880 (Me.1969); M.R.Evid. 801(d)(1) (1984). If the offered statement was not made prior to the time the improper motive arose, it would not be relevant under M.R.Evid. 401 (1984), for it would not tend to prove or disprove a claim of recent fabrication or improper influence or motive. The very purpose of the rule is to allow the fact finder "to consider a statement made prior to the time any improper motive may have arisen, as bearing on the credibility of the testimony given in court." State v. Rolls, 389 A.2d 824, 828 (Me.1978); see State v. True, 438 A.2d at 465.

In the instant case, the defendant contends the prior consistent statement offered through the testimony of Charles Hebert did not tend to prove or disprove the charge of recent fabrication and improper influence, and should not have been admitted. The defendant reasons that Charles Hebert, like his sister Christina, was subject to the improper influence of Sharon Hebert, and therefore Charles Hebert's testimony could not be used to rebut a charge that Christina was improperly influenced. The defendant notes that pursuant to court order Sharon Hebert had exclusive custody of both children since the fall of 1980, and thus the opportunity to gain such influence.

 The defendant confuses the issue of admissibility of the prior consistent statement with the issue of credibility. The statements Christina made to her brother were both relevant and admissible under the test we have heretofore applied. The statements corroborated Christina Hebert's direct testimony; the defense theory was that Sharon Hebert had exerted improper influence over her two children which led to their testimony against the defendant; and the statements were made at a time when the reason for giving false

testimony (the influence of the mother after the separation) had not yet arisen.[8] *See State v. Fredette,* 462 A.2d at 22–23. Because the statements offered satisfied the test for admissibility, the presiding justice committed no error in allowing Charles Hebert to testify to his sister's statements. Defense counsel was free to cross-examine Charles Hebert and argue before the jury to offset the damaging effects of the prior consistent statement. The jury, the ultimate trier of fact, was free to weigh the credibility and trustworthiness of the disputed testimony in light of the defense argument and assign to the testimony such weight as it deemed appropriate. Maine Rule of Evidence 801(d)(1), which provides that a prior consistent statement is admissible to rebut an express or implied charge of recent fabrication or improper influence or motive, cannot be read to imply that the witness testifying to such statement be unimpeachable.

### III. Testimony of Dr. MacMahon

The defendant contends Dr. MacMahon, the pediatrician who examined Christina Hebert in September, 1980, should not have been allowed to testify to a statement Christina made to him during the course of the examination, or to express his opinion that Christina had engaged in sexual activity.

### A. Christina Hebert's statement

During direct examination, Dr. MacMahon testified Christina Hebert told him "that there had been sexual activity with an adult." For this statement to be admissible in evidence, it must fall within the exception to the hearsay rule in M.R. Evid. 803(4) (1984), which states:

(4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical his-

tory, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment [are not excluded by the hearsay rule].

The defendant argues that because Christina underwent the examination for a legal purpose—"to gather evidence for use in a criminal prosecution"—the statement was not one made for purposes of medical diagnosis or treatment. We disagree.

The mere fact that the examination was potentially helpful to the prosecution's case does not detract from its medical nature. As Dr. MacMahon testified, the examination was conducted to see if there was any scarring, damage, or evidence of past sexual activity or abuse, or any obvious abnormality in the child's pelvic area. The purpose of the examination was clearly to allow medical diagnosis, and Christina's statement was pertinent thereto.[9] *Cf. State v. True,* 438 A.2d at 467 (statement that it was intercourse occurring the previous evening that caused victim to consult a doctor fell within 803(4) exception to exclusion of hearsay); *State v. Lee,* 404 A.2d 983, 984 n.1 (Me.1979) (chart entry by nurse who took victim's history that victim was assaulted, stepped on in stomach, and hit with iron pipe was admissible). We reject the defendant's contention that admission of Christina's statement to Dr. MacMahon was contrary to the rationale behind the "statements pertinent to medical diagnosis" exception to the hearsay rule. *See* M.R.Evid. 803(4) adviser's note (rationale for exception is inherent reliability of statements to doctor pertinent to diagnosis); *see also State v. Howard,* 405 A.2d 206, 209 (Me.1979). Dr. MacMahon clearly understood he was conducting the examination for the purpose of medical

---

**8.** The Heberts separated in August, 1980. Apparently, the prior consistent statements were made during the preceding spring and summer.

**9.** The adviser's note to Rule 803(4) states, "The words 'insofar as reasonably pertinent to diag-

nosis or treatment' are broad enough to cover statements as to the cause of an injury ('I was struck by a car') but not statements of fault ('The car went through a red light').

diagnosis. The statement made for purposes of the diagnosis did not lose its inherently trustworthy nature merely because the declarant might have been aware criminal proceedings might be instituted.[10]

**B. Dr. MacMahon's statement of opinion**

The defendant contends Dr. MacMahon should not have been allowed to express his opinion that the ragged edges of Christina's hymen and the enlarged opening of the introitus were consistent with tearing causing bleeding and with past sexual activity. The defendant reasons that since Christina's medical condition was no less consistent with sexual inactivity as with attempted or actual penetration of the vagina, it did not assist the trier of fact in determining the crucial issue in the case and was thus not admissible under Maine Rule of Evidence 702.[11]

 We disagree. It is well-established that an expert need not be able to state his opinion with any special degree of certainty. The degree of certainty goes to the weight and not the admissibility of the evidence. *See, e.g., State v. Woodbury*, 403 A.2d 1166, 1170 (Me.1979); *State v. Mitchell*, 390 A.2d 495, 501 (Me.1978). We perceive no abuse of discretion in the presiding justice's determination that the opinion testimony of Dr. MacMahon could be helpful to the jury.

**IV. Denial of the motion for a mistrial**

During the prosecutor's cross-examination of defense witness Dr. Conrad Wurtz, the following exchange took place:

Q Were you made aware that he [defendant] had not slept with his wife for some period of time before their marriage ended?

A I was aware that there was marital difficulty, yes.

Q Were you aware that there was [sic] sexual problems within the marriage that she had not slept with him for some period of time?

A I was not aware of that specific fact, no.

After the second question was answered, defense counsel objected and moved for a mistrial. Although the motion was denied, the presiding justice, after stating to counsel there was no evidence in the record to support the factual allegation contained in the question,[12] specifically instructed the jury to disregard the disputed questions and answers, and struck them from the record. Additionally, during his instructions to the jury at the close of the evidence, the presiding justice stated:

Now there were several times during the course of the trial that evidence was stricken and you were instructed to disregard that evidence. Well, that instruction is simple: disregard the evidence that was stricken and remove it from your consideration as to the facts in this case.

The defendant argues the presiding justice committed reversible error by denying the motion for a mistrial. We find no merit in the defendant's contention.

 The denial of a motion for a mistrial will not be disturbed on appeal absent an abuse of discretion. *State v. Mahoney*, 459 A.2d 1073, 1078 (Me.1983); *State v.*

---

10. Additionally, the defendant contends that Christina's statement, even if given for the purpose of medical diagnosis, was not descriptive of "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof ...," as required by M.R.Evid. 803(4). We disagree. Christina's statement related to the cause of past pain, symptoms or sensations. No abuse of discretion was committed in its admission.

11. M.R.Evid. 702 (1984) provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

12. We assume, without deciding, that the questions were objectionable.

*Rheaume,* 131 Me. 260, 261, 160 A. 877, 877 (1932). We hold there was no abuse of discretion in the instant case.

 Dr. Wurtz's testimony was based on interviews and tests designed to measure the defendant's psychological propensity to commit the offense charged. The prosecutor's questions can be viewed as an attempt to test the thoroughness of the witness's knowledge of the defendant's interpersonal difficulties. Moreover, in light of the prompt steps taken by the court to counteract the effect on the jury such questions and answers might have had, we cannot find prejudice resulted from the denial of the motion for a mistrial.

## V. Exclusion of certain testimony of Doris Leonard

 The defendant assigns as error the Superior Court's refusal to allow defense witness Doris Leonard to testify that Sharon Hebert was the aggressor in physical confrontations with the defendant during the marriage. The presiding justice excluded this testimony as cumulative, remote, and beyond the bounds of relevance. In order to prevail on this matter, the defendant must establish that the presiding justice abused his discretion. *See State v. Spearin,* 463 A.2d at 730–31 (determinations of relevance are within discretion of presiding justice and will not be overturned absent abuse of such discretion); *State v. Cedre,* 314 A.2d 790, 799 (Me.1974) (extent and scope of impeachment testimony are matters within limits of judicial discretion).

 Although it would not have been error to allow the testimony, to exclude it was not an abuse of discretion. Maine Rule of Evidence 403 (1984) provides that relevant evidence may be excluded if its probative value is outweighed by any one of a number of factors, including confusion to the jury and needless presentation of cumulative evidence. According the presiding justice great latitude to determine whether the probative value of the evidence offered was of sufficient weight to justify its admission, we find no error was

committed. Another defense witness had previously testified Sharon Hebert was the aggressor in physical confrontations with her former husband. Therefore, the evidence was cumulative. Moreover, the testimony the defendant sought to produce related to a collateral issue of credibility, one which might have confused the jury as to the true issue in the case—whether Edmond Hebert sexually molested his daughter.

## VI. Prosecutorial misconduct

 On appeal, the defendant contends for the first time that the prosecutor, during closing argument, improperly appealed to the sympathy of the jury, and improperly accused the defendant and one defense witness of testifying falsely. Since no objection was raised at trial, these alleged improprieties constitute a basis for vacating the judgment only if they worked a manifest injustice as to the defendant. *State v. Spearin,* 463 A.2d at 731; *State v. Smith,* 455 A.2d 428, 430 (Me.1983); *see* M.R.Crim. P. 52(b) (1984).

 In the recent past, this court has had several opportunities to address claims of prosecutorial misconduct during closing argument. *See State v. McDonald,* 472 A.2d 424 (Me.1984) (prosecutor's comments designed to awaken suspicion in jury that insanity defense was mere subterfuge improper); *State v. Pineau,* 463 A.2d 779 (Me.1983) (argument injecting extraneous matters of fear for personal safety impermissible); *State v. Smith,* 456 A.2d 16 (Me. 1983) (assertions conveying prosecutor's personal conviction that defendant lied on stand improper); *State v. Burgoyne,* 452 A.2d 393 (Me.1982) (improper to appeal to jurors' sympathy with "emotionally charged and inflammatory remarks"). These cases reaffirmed the well-established rule that the prosecutor has a responsibility to help ensure a fair trial, and although permitted to strike hard blows, may not strike foul ones. *See State v. Reilly,* 446 A.2d 1125, 1128 (Me.1982).

Having carefully reviewed the principles set forth in these cases, we cannot say the comments of the prosecutor in the instant case manifestly deprived the defendant of a fair trial. Although we do not sanction the prosecutor's appeal to the jury to "consider, also, that Tina Hebert had rights too," neither this nor any other statement of the prosecutor, viewed alone or collectively, mandates we vacate the judgment of conviction.

The entry is:

Judgment affirmed.

All concurring.