**STATE of Maine**

v.

**David L. THORNTON**

and

**William Bath.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1980.

Decided May 13, 1980.

---

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Margaret J. Kravchuk, Asst. Dist. Attys., Bangor, for plaintiff.

Brown & Fitzpatrick by James Fitzpatrick, Portsmouth (orally), for David Thornton.

Paul F. Zendzian, P.A. by Jay P. McCloskey, Bangor (orally), for William Bath.

Before McKUSICK, C. J. and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GODFREY, Justice.

By a three-count joint indictment, David Thornton and William Bath were indicted for unlawful trafficking in schedule-X drugs, hashish and mescaline, and a schedule-W drug, amphetamines (17–A M.R.S.A. § 1103). A complaint for unlawful furnishing of a schedule-Z drug, marijuana, was also brought. (17–A M.R.S.A. § 1106). A jury found both defendants guilty of trafficking in hashish and amphetamines, furnishing marijuana, and possession of mescaline (17–A M.R.S.A. § 1107). The defendants appeal the judgments of conviction entered upon those jury verdicts. We affirm the judgments.

From the testimony, the jury could have found the following facts: On March 17, 1979, Detective Burgess of the University of Maine Police Department, obtained a search warrant authorizing a search of Room 106, Hannibal Hamlin Hall, University of Maine at Orono. William Bath was in Room 106 when the officers arrived to execute the search warrant. Thornton came to

the room during the course of the search. The search of Room 106 revealed quantities of marijuana, hashish, amphetamines and mescaline, as well as a scale with weights, a pipe and cigarette papers, $785 in cash, and an assortment of "Ziploc" bags and "baggies". The defendants were the only residents of Room 106 from January, 1979, through March 17, 1979.

### Particularity of Description in the Warrant

■ The appellants argue that the description in the search warrant, authorizing a search for "marijuana, and cocaine and any other contraband substances possession of which is illegal," was too broad and thus made the warrant a general one. They contend that the addition of "other contraband substances" granted the executing officer unlimited discretion and thereby authorized a general search.

The fourth amendment prohibits general warrants.[1] Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). See also Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). Here the description of the property sought was sufficient to meet the requirements of the fourth amendment. The language "marijuana and cocaine" is a permissible description. Descriptions in generic terms have been approved, especially in cases where the material to be seized is contraband. See, e. g., Steele v. United States No. 1, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925) ("cases of whiskey"). Where the purpose is not to seize specified items of property, "but only property of a specified character, which by reason of its character is contraband, a description by designating its character is sufficient." People v. Prall, 314 Ill. 518, 522, 145 N.E. 610, 612 (1924), cited in Grimaldi v. United States, 606 F.2d 332, 338 (1st Cir. 1979).

The language "any other contraband substances possession of which is illegal" must be read in conjunction with the preceding language "marijuana and cocaine". The general description must be taken to refer to illegal drugs. In Andreson v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Supreme Court held that general language following a detailed particular description of items to be seized did not make the warrant a general one. The general language was necessarily restricted by the previously mentioned items. As the First Circuit has recently stated, Andreson means "that the 'general' tail of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." United States v. Abrams, 615 F.2d 541, 547 (1st Cir. 1980). The description was not "too elliptical to give clear guidance to the seizing officer." See Campbell, J., concurring in United States v. Abrams, supra at 548.

### Sufficiency of Affidavit Supporting the Warrant

■ Before trial, the defendants moved to suppress all evidence seized as a result of the search of Room 106 on March 17, 1979. They contended that probable cause sufficient to justify the issuance of the warrant was lacking. Though the motion to suppress was granted in part,[2] the trial justice found that the affidavit supporting the request for the search warrant made a legally sufficient showing of probable cause. On appeal, the defendants challenge that finding.

The affidavit made by Detective Burgess, recited the following as facts: In October, 1978, affiant had interviewed a certain individual named Lovely, who had been detained by campus police as a suspicious person. Lovely told affiant that he had been with "two guys" on campus who had "cut"

---

1. The fourth amendment provides, in part, as follows:

 . . . and no Warrants shall issue, but upon *probable cause*, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. In addition to the drugs found, the officers had seized a wall telephone, a fire extinguisher and personal letters of the defendants. Those items were suppressed because, though they were in plain view, there was no probable cause sufficient to justify the seizure of them.

a kilo of cocaine. In that same month, the residential advisors in the defendants' dormitory told affiant it was common knowledge that both defendants were drug dealers. One of the advisors told affiant also that Thornton and Bath had possessed the kilo of cocaine in Room 106.

On the basis of this information, the police began maintaining surveillance of the defendants' room. An officer (not Burgess) positioned himself in an adjacent room, where he could see who entered and left the defendants' room and could attempt to overhear any discussion in defendants' room. During the evening of March 15, 1979, the officer reported observing a person or persons enter Room 106 and overheard the following conversation between the visitors and occupants: "How much is it?" "Is it any good?" The response was loud laughing, then, "It's a couple of quarters and it's yours." The affiant then stated that in his own experience the term "quarter" is used in selling marijuana and means twenty-five dollars. On the night of March 16, 1979, while both defendants were in the room, the officer reported overhearing two voices discussing an unknown number of pounds of "coke" in a trunk. One of the voices said, "What a sight!"

The affiant also stated that the officer reported overhearing several discussions interpreted by him as involving the sale and purchase of cocaine and marijuana. In addition, he observed a considerable number of individuals coming to defendants' room, eight to ten one evening, twelve to fourteen another evening. The visits were often of short duration, about ten to twenty minutes. Last, on the evening the affidavit was made and the warrant issued, the affiant smelled the odor of burning marijuana emanating from the defendants' room.

 The validity of a search warrant is tested by determining whether the facts stated in the affidavit in support of the application for the warrant are sufficient to establish probable cause to believe that grounds exist for the application. Rule 41(c) M.R.Crim.P.; *State v. Willey*, Me., 363 A.2d 739 (1976). In this context, probable

cause signifies a factual basis in the affidavit before the magistrate, justifying a reasonable belief on his part that a crime has been committed on the premises to be searched or that the proposed search is otherwise permissible under Rule 41, M.R. Crim.P. *State v. Gamage*, Me., 340 A.2d 1, 15 (1975). The test for probable cause is restricted to the four corners of the affidavit. *State v. Ruybal*, Me., 398 A.2d 407, 414 (1979). However, the affidavit is to be tested and interpreted by appellate courts in a common-sense and realistic fashion. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *State v. Appleton*, Me., 297 A.2d 363, 367 (1972).

 The affidavit in question states sufficient facts to establish probable cause. Although Burgess's affidavit contains some stale information and does not set forth circumstances indicating the reliability of certain hearsay, taking the affidavit in its entirety we find that the hearsay and stale information is corroborated by recent direct observations of the affiant and his fellow officer. Where facts contained in the affidavit are derived from observations made and reported to the affiant by fellow law officers engaged in a common investigation, the magistrate is permitted to infer reliability and may weigh the statements of fact for sufficiency. *United States v. Ventresca, supra* at 111, 85 S.Ct. at 747; *State v. Gamage, supra* at 15.

The officers heard conversations in the defendants' room concerning "coke" and "quarters". The implication of those conversations was that cocaine and marijuana were present in the room. Many persons visited the room and stayed a short time. The officers smelled the smoke of burning marijuana emanating from Room 106 immediately before the search warrant was requested. The suspicious nature of the conversations and occurrences tended to corroborate the hearsay information that the defendants possessed cocaine and were known to be drug dealers. The affidavit stated sufficient facts to establish probable cause that unlawful possession of scheduled drugs was taking place in Room 106. See

subsections (b) and (c) of Rule 41, M.R. Crim.P.

## Validity of the Search

■ The appellants also assert that the execution of the warrant was illegal because the search went unnecessarily beyond the scope of the warrant and became a general exploratory search. Eight police officers took part in the search. Hunting for drugs, they dismantled furniture, door casings, mouldings, light switches and chessmen. They also searched inside the refrigerator. However, the search was not inappropriate as a search for marijuana or cocaine.

■ The mescaline, amphetamines, and hashish were lawfully seized in the course of executing the warrant because they were inadvertently discovered in plain view while the police were lawfully searching for marijuana and cocaine, *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971), and there was probable cause to believe that those substances were evidence of crime. *See Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Commonwealth v. Wojcik*, 358 Mass. 623, 266 N.E.2d 645 (1971).

## Sufficiency of Evidence

■ The appellants question the sufficiency of the evidence to support the convictions of trafficking in amphetamines and hashish and furnishing marijuana.[3] The convictions must be set aside if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *State v. Lagasse*, Me., 410 A.2d 537, 542 (1980), relying on *Jackson v. Virginia*, 443 U.S. 307, 328–29, 99 S.Ct. 2781, 2794, 61 L.Ed.2d 560, 576–77 (1979).

No direct evidence of selling or furnishing was adduced. The state presented evidence of trafficking and furnishing by showing possession with the intent to traffick or furnish.[4] There was evidence from which the jury could have reasonably found that the two defendants were the only residents of Room 106; that during the search of the room, the officers found approximately twenty-seven ounces of marijuana in ten different glassine bags, approximately one and a half ounces of hashish, four glassine bags each with one-quarter ounce of hashish, and a piece of paper labeled "¼ oz.", and fourteen aluminum foil packets of hashish with a total weight of fourteen grams, about 500 amphetamine pills, five to ten grams of mescaline, a laboratory scale with weights, $785 in cash, eight "Ziploc" bags and a box containing glassine sandwich bags. Those items were located throughout the living room and bedroom comprising Room 106. A brown powdery substance, identified by one witness as marijuana, was located on the base of the scale.

On the basis of his experience as a drug law enforcement officer, Corporal Stevens of the Maine State Police testified that in the drug trade marijuana was sold in "baggies" like those found in Room 106, that the marijuana in evidence was similarly packaged, that the scale was of a type used by drug dealers for weighing marijuana and other drugs, that the hashish in evidence was packaged in a manner usual for sale, that "¼ oz." tags are frequently used when selling hashish, and that the packaging of

3. Appellants do not raise an issue as to the sufficiency of evidence for conviction of possession of mescaline.

4. Subsections (17) and (18) of 17–A M.R.S.A. § 1101 define "traffick" and "furnish" as follows:

17. "Traffick:"
A. To make, create, manufacture;
B. To grow or cultivate, except with respect to marihuana;
C. To sell, barter, trade, exchange or otherwise furnish for consideration; or

D. To possess with the intent to do any act mentioned in paragraph C, except that possession of 2 pounds or less of marijuana with such intent shall be deemed furnishing.
18. "Furnish:"
A. To furnish, give, dispense, administer, prescribe, deliver or otherwise transfer to another;
B. To possess with the intent to do any act mentioned in paragraph A.

the amphetamine pills in glassine bags is common in the trade.

The testimony about the frequent nocturnal visits to the defendants' room, the packaging of the various drugs, and the presence of the scales and the relatively large amount of money in the room, taken in conjunction with the amount and variety of drugs found in the room, provided sufficient evidence to permit a rational jury to conclude beyond a reasonable doubt that the appellants possessed hashish and amphetamines with the intent to sell them and possessed marijuana with the intent to furnish it.

### Motion for Mistrial

Appellant Thornton raises two issues not raised by Bath. He asserts that the trial justice erred by not granting a mistrial when Corporal Stevens testified that the amount of hashish, marijuana, and amphetamines alone was evidence that the defendants were trafficking in each. Responding to a threshold motion by defendant, the trial justice said he would permit Stevens to testify, based on his experience as a drug law enforcement officer, concerning the general use of certain paraphernalia in the drug trafficking business. However, the justice warned the prosecution that Stevens would not be permitted to testify that the amount alone was indicative of trafficking. The prosecuting attorney failed to instruct the witness about that limitation, and Stevens in testifying did say on three occasions that the amount showed that the defendants were trafficking. Objections were made during two of the three occasions and were sustained. Later, both defendants moved for a mistrial. The trial justice denied the motion, offering, however, to give a cautionary instruction to the jury. Appellant Thornton now argues that no curative instruction could have erased the prejudice that occurred.

The trial justice did not abuse his discretion in ruling out opinion evidence by the police that the amount of drugs found in defendants' room was itself indicative of trafficking. Likewise, however, he did not abuse his discretion in refusing to grant a mistrial, a decision that rested in his sound discretion in the light of all the circumstances. A mistrial should be granted only where remedial measures short of a new trial will not satisfy the interests of justice. *State v. Kelley*, Me., 357 A.2d 890, 896 (1976). Considering all the evidence of record, we cannot say, as a matter of law, that this particular opinion testimony by Corporal Stevens, heard by the jury, required granting of a mistrial. *See State v. Butts*, 372 A.2d 1041 (1977); *State v. Heald*, Me., 292 A.2d 200 (1972).

Despite the outcome, it was improper for the prosecutor to disregard the judge's instruction to limit the testimony of Corporal Stevens. By his threshold motion, defense counsel had attempted to ensure that testimony of questionable admissibility would not be presented. The trial justice agreed that the evidence should not be admitted and instructed the prosecutor to inform the witness of the limitation. The failure to do so by the prosecutor was improper, even though from the record it appears that the impropriety was the result of negligence rather than deliberate design or bad faith.[5]

### Chain of Custody

Thornton also argues that the real evidence adduced in this case was inadmissible because proof of the chain of custody was lacking. When the officers seized the evidence at Room 106, they placed it in unsealed envelopes, which were taken directly to the evidence locker at the campus

---

5. *See* Warren, C. J., concurring in *Burgett v. Texas*, 389 U.S. 109, 116 n.1, 88 S.Ct. 258, 263 n.1, 19 L.Ed.2d 319:

> Prosecutorial bad faith, of course, is not an irrelevant element in our review of state criminal convictions. It can often make even more intolerable errors which demand cor-

rection in this Court. See, *e. g., Miller v. Pate*, 386 U.S. 1 [, 87 S.Ct. 785, 17 L.Ed.2d 690]; *Napue v. Illinois*, 360 U.S. 264 [, 79 S.Ct. 1173, 3 L.Ed.2d 1217]; *Mooney v. Holohan*, 294 U.S. 103 [, 55 S.Ct. 340, 79 L.Ed. 791].

police headquarters. There was no routine procedure for logging out items removed from that locker. However, one officer testified that he had the only key to the locker and that the drugs and paraphernalia brought into court in this case were those taken from Room 106 and placed in the police locker. There was nothing to indicate that the evidence had been tampered with. It had been removed from the locker on only two occasions before trial, once for photographing and once for chemical analysis.

The defendants objected at trial, arguing that the evidence was rendered inadmissible by the lack of a routine procedure, or log, covering removal of items from the campus police locker, and by the fact that the same locker was available for securing evidence in all cases arising on campus. The trial justice correctly ruled that the chain-of-custody issue did not render the evidence inadmissible but merely presented a jury question as to the probative value of the evidence in question. *State v. Desjardins*, Me., 401 A.2d 165, 171 (1979).

The entry is:

Appeal denied.

Judgments affirmed.

All concurring.