**STATE of Maine**

v.

**Rodney PARKER.**

Supreme Judicial Court of Maine.

Argued May 5, 1983.

Decided June 14, 1983.

Paul Aranson, Dist. Atty., BethAnne Poliquin, Asst. Dist. Atty. (orally), James Rocheleau, Law Student (orally), Portland, for plaintiff.

Childs, Emerson, Rundlett & Fifield by Ellsworth T. Rundlett, III (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

McKUSICK, Chief Justice.

Rodney Parker was convicted of Class A robbery, 17–A M.R.S.A. § 651(1)(E) (1983), after a jury trial in Superior Court (Cumberland County). On appeal, he contends that the evidence adduced at trial was insufficient as a matter of law to sustain the jury's guilty verdict and that the trial justice erred in allowing the prosecution to put before the jury an out-of-court admission by defendant. We reject both of defendant's claims and affirm the judgment below.

The prosecution's key witness was Joseph M. Johnson, who told the jury that he was introduced to defendant by Darryl Parker, defendant's brother, with whom Johnson had been acquainted for several years. Johnson invited the two young men to his apartment on North Street in Portland on the evening of May 28, 1982. At some point during the evening, Darryl passed to Rodney a "B.B." gun that he had brought with him; Rodney pointed the gun at Johnson and threatened to shoot him, while his brother Darryl forced Johnson to sign a "receipt" stating that he had sold his television set, his stereo, and his toaster to Darryl. The brothers then demanded that Johnson give them his cash and his car keys; as soon as he complied they loaded up the car with a variety of items from Johnson's apartment, including those mentioned in the receipt. With Rodney still holding the gun on Johnson, the three men got into the car and drove to a building on Gilman Street, where Darryl unloaded the television set and then resumed his place behind the wheel of Johnson's car. Johnson testified that he was eventually let out of the automobile near a local shopping center, warned not to call the police, and told where he could find his car the next morning. The brothers drove off and Johnson walked home. The next morning, after failing to find his car where the Parkers had said it would be, Johnson telephoned the Portland police and gave them an account of the crime.

Johnson's story was corroborated in part by the testimony of several Portland police officers, who told the jury that they received Johnson's call on the morning of May 29 and began a search for the missing automobile in the Gilman Street neighborhood. They found the car on Gilman Street. They also found Rodney and Darryl Parker in an apartment on that street, together with the items from Johnson's apartment that he had described to the police.

Officer Mark Dion testified that he interviewed defendant Rodney Parker at the police station after defendant's arrest. Dion said, "I started out by relating the incident ... as I knew it, based upon the victim's statement, and I asked him if he felt there was anything he would like to correct in that." Before Dion could repeat defendant's response, defense counsel objected to this line of questioning as "hearsay upon hearsay." The trial justice overruled the objection and the prosecutor continued questioning Officer Dion as follows:

Q. [by the prosecution] And, you related statements first made to you by Mr. Johnson; is that correct, to Mr. Rodney Parker; is that correct?

A. [by Officer Dion] Correct.

Q. And, what was your question, what was your exact question to Mr. Parker?

A. My question was, after I related the incident based upon what Mr. Johnson

stated, I said, "Rodney, do you dispute or disagree with the story that I have told you concerning the robbery you and your brother were involved in?

His reply was, "No, I don't disagree with that but I do need a lawyer."

Q. Your story, as you related it to him, included his holding the gun?

A. I would have to refer to that.

That's correct.

Q. And it had in fact stated that the defendant was present all during the robbery; is that correct?

A. Correct.

On appeal, defendant continues to assert that Dion's testimony was "double hearsay," as well as arguing that the testimony was "without foundation." The record shows that the trial justice did not err in admitting the challenged portion of Officer Dion's testimony.

■■■ Defendant's statement, "No, I don't disagree with that," as repeated by Officer Dion to the jury, was not hearsay. Rather, it was an admission by defendant and as such properly placed before the jury under M.R.Evid. 801(d)(2)(A). Nor was defendant's statement, as repeated by Officer Dion, inadmissible for lack of a proper foundation. The prosecutor's questions brought out that defendant had been read a statement that "concern[ed] the robbery [defendant] and [his] brother were involved in," that "included [defendant's] holding the gun," and that "stated that the defendant was present all during the robbery." From this testimony about the content of the statement related to defendant, the jurors were able to understand that defendant had, essentially, admitted that he and his brother Darryl had been involved in a robbery during which defendant had been continuously present and had held a gun. A sufficient, if somewhat less than elaborate, foundation was therefore laid for the ad-

mission in evidence of defendant's own statement.

■■■ Insofar as Officer Dion repeated or alluded in his testimony to out-of-court statements made by persons other than defendant, those statements were all part of the foundation necessary for the jury to understand defendant's own admission. As such, they were properly admitted and not subject to the hearsay rule. *See State v. Anaya*, 456 A.2d 1255, 1265 (Me.1983).[1]

■■■ As for defendant's claim that the evidence at trial as a whole was insufficient to support the conviction, our review of the record convinces us otherwise. The uncorroborated testimony of a victim may support a conviction if "not contradictory, unreasonable, or incredible." *State v. Pierce*, 438 A.2d 247, 252 (Me.1982). *See also State v. Goodrich*, 432 A.2d 413, 415–16 (Me.1981); *State v. Flaherty*, 394 A.2d 1176, 1177 (Me. 1978). Johnson's testimony was neither self-contradictory, unreasonable, nor inherently incredible. Moreover, it was corroborated, at least in part, by the testimony of the police officers and by defendant's admission, discussed above. Although Johnson's story was contradicted by defendant's testimony when he took the stand in his own defense, "it was the exclusive province of the factfinder, here the jury," to decide which story to believe. *State v. Doughty*, 399 A.2d 1319, 1326 (Me.1979). The jurors here believed the prosecution witnesses. We cannot say that they were unjustified in doing so.

The entry is:

Judgment affirmed.

All concurring.

---

1. We note that defendant's two objections to the testimony at issue here cut against each other. On the one hand, he asserts that the prosecution failed to lay a foundation sufficient for the jury to understand what defendant meant when he said, "No, I don't disagree with that." On the other hand, he would seek to exclude all foundational testimony as "double hearsay." He cannot have it both ways. In fact, on the record in this case he cannot have it either way.