STATE of Maine

v.

John PINEAU.

Supreme Judicial Court of Maine.

Argued May 5, 1983.

Decided Aug. 5, 1983.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), R. Christopher Almy, Asst. Dist. Attys., Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, P.A., Carl F. Rella (orally), Bangor, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, CARTER * and WATHEN, JJ., and DUFRESNE, A.R.J.

NICHOLS, Justice.

The determinative issue in this case focuses upon the limits of rebuttal argument to the jury permitted a prosecutor.

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

The Defendant, John Pineau, was convicted of operating under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B, following a jury trial in Superior Court, Penobscot County. Challenging his conviction, he raises four issues on appeal. We consider only one of those issues, and we sustain his appeal.

At the very end of his rebuttal the prosecutor proposed to the jury the following hypothesis:

> Let's just for a moment suggest to you this, let's say that there was a driver that evening who happened to be in the Bangor area and he was going up Interstate 95 and he had—he was going to go to the University of Maine campus and he had a choice of what exit he was going to take along Interstate 95. Was he going to take the Kelly Road exit, was he going to go further north and take the Stillwater exit? And let's say for the moment as he was driving along Interstate 95 north thinking about that decision, he also knew that John Pineau was on the road on Route 2 and he also knew what you people now know and he also knew that John Pineau was going to take a right-hand turn on the Kelly Road. What exit do you think he'd take? Do you think that driver would take the Kelly Road knowing John Pineau was coming the other way or would he go on to the Stillwater exit? Your verdict is going to tell us your answer to that question. Thank you.

Defense counsel objected to this hypothesis and requested a curative instruction. The court denied the request for a curative instruction and instead gave the jury its usual instructions.

■ Our Court has made clear that while the prosecutor may use "wit, satire, invective, and imaginative illustration," in presenting the State's case, *State v. Reilly*, 446 A.2d 1125, 1128 (Me.1982) (quoting

*State v. Martel,* 103 Me. 63, 66, 68 A. 454, 455 (1907)), in his argument to the jury he is limited to "the domain of facts in evidence." *Id.* The prosecutor, furthermore, has an overriding obligation to see that an accused receives a fair trial. *See State v. Wyman,* 270 A.2d 460, 463 (Me.1970).

■ We conclude that here the prosecutor overstepped the bounds of proper closing argument in leaving the jury at this hypothetical "fork in the road." The first problem with the prosecutor's last-minute pitch is that it attempted to reduce a complex question—whether the State has proved beyond a reasonable doubt every element of the offense of operating under the influence—to the much different question of whether a reasonable driver would choose to travel the road on which the Defendant was approaching. The questions are not the same.

The Defendant testified at trial that he had consumed three martinis the evening of the arrest. Armed with this knowledge and faced with choosing between the two roads, a reasonable driver might well decide to take "the one less traveled by,"[1] regardless of whether the Defendant was guilty of operating under the influence as defined by statute.

■ A related problem is that this "fork in the road" sally injected the extraneous matters of fear and highway safety into the case. Although postured as involving a hypothetical driver faced with a choice of roads, the clear thrust of the argument was to place each juror in the driver's seat and to allow each juror, in making his personal choice of which road to take, to decide the Defendant's guilt. Instincts of self-preservation cannot serve as a surrogate for detached evaluation of guilt or innocence. We affirm the rule set forth in the ABA Standards for Criminal Justice which provides:

The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law . . . .

American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8(d) (1971). The "fork in the road" diversion, focusing the jury's thoughts on concern for personal safety rather than on proof of the elements of the offense with which the Defendant was charged, transgressed this requirement.

Furthermore, since the prosecutor withheld his proposal of a fictional choice until the very close of his rebuttal, its impact on the jury was obviously enhanced. The Defendant's counsel could, and did, request a curative instruction; he had no other means to respond to the prosecutor's final sally. When the Superior Court refused to give a curative instruction, a significant possibility existed that the jury would apply the prosecutor's "fork in the road" hypothesis in reaching its verdict.

■ Therefore, we conclude that the Superior Court abused its discretion in refusing to give a curative instruction as requested by defense counsel.

We further conclude that the failure to give such an instruction was more than harmless error. While the evidence against the Defendant was substantial, diverting the jury's determination of guilt or innocence to a simple choice of roads created a risk that the jury would base its verdict on impermissible considerations. This did not involve a collateral matter. Rather, the "fork in the road" analogy went directly to the means by which the jury should reach its verdict. We cannot conclude that it was "highly probable" that the jury's verdict in this case was unaffected by this improper diversion from the real issues of the case.

1. R. Frost, "The Road Not Taken," *reprinted in Come In and Other Poems* (Untermeyer ed. 1943).

*State v. Smith,* 456 A.2d 16, 19 (Me.1983). We must, therefore, vacate the conviction.

We need not discuss the remaining issues on appeal.

The entry is:

Appeal sustained.

Judgment of conviction vacated.

Remanded for further proceedings consistent with the opinion herein.

GODFREY, J., and DUFRESNE, A.R.J., concurring.

WATHEN, Justice, with whom McKUSICK, Chief Justice, joins, dissenting.

I respectfully dissent. I agree that the remarks of the prosecutor were improper and that the court erred in declining to give a curative instruction. I would conclude, however, that the error was harmless.

It does not appear that the prosecutor was aware of the impropriety of the statements at the time they were made. Further, those offending remarks were effectively negated by the court's affirmative statement of the proper principles of law which were to control the jury determination. Finally, the record contains overwhelming evidence of defendant's guilt. Under these circumstances, I find it to be highly probable that the jury's determination of defendant's guilt was unaffected by the improper remarks of the prosecutor. *See State v. Smith,* 456 A.2d 16, 19 (Me. 1983); *State v. Reilly,* 446 A.2d 1125 (Me. 1982); *State v. True,* 438 A.2d 460, 467 (Me.1981).