STATE of Maine

v.

Samuel HINDS.

Supreme Judicial Court of Maine.

Argued Sept. 7, 1984.

Decided Dec. 11, 1984.

Charles K. Leadbetter, Anita M. St. Onge (orally), Herbert Bunker, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

Dunlap & O'Brien, Mark E. Dunlap (orally), Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

After a jury trial in the Superior Court, York County, the defendant was convicted of sexual abuse of a minor, 17–A M.R.S.A. § 254 (1983), and aggravated furnishing of scheduled drugs, 17–A M.R.S.A. § 1105 (1983). On appeal the defendant challenges the sufficiency of the evidence supporting his convictions and asserts that prosecutorial misconduct denied him a fair trial. We deny the appeal.

Except for the critical issue of what happened during the early morning hours of Sunday, May 22, 1983, the facts of this case are undisputed. On Saturday, May 21, 1983, the fifteen year old complainant arranged to stay overnight at the home of a fellow student. This fellow student, "Orly," lived with the defendant, Samuel Hinds, at 1E Oak Hill Condominiums in Scarborough. The defendant was Orly's legal guardian, having brought Orly to Maine from Puerto Rico so Orly could attend high school in Maine.

On the evening of May 21, the complainant and Orly went out on a date with some girls. They returned to the defendant's

condominium sometime between 12:30 a.m. and 2 a.m. After the two boys were up in Orly's bedroom, the defendant and another man, Keith Bennett,[1] arrived at the Hinds residence. The complainant and Orly eventually joined Hinds and Bennett in the kitchen.

At trial the parties gave two different accounts of what happened next. The complainant testified to the following occurrences. The defendant and Keith Bennett provided him with marijuana and alcohol. After he had smoked marijuana and drank three and one-half rum and cokes in the kitchen, he returned to Orly's bedroom, where the defendant joined him after ten or fifteen minutes. A short time later, while the complainant was lying on a cot, the defendant started massaging him, grabbed the complainant's penis, and placed it in his mouth. The defendant then took the complainant to the defendant's bedroom, where they were joined by a naked Keith Bennett. The defendant and Keith Bennett then involved the complainant in various sexual acts. The defendant gave the complainant twenty dollars and asked him to keep quiet about what had happened. The complainant then took a shower and went back to bed in Orly's room.

The defendant, however, testified that he neither furnished any drugs or alcohol to the complainant nor engaged in any of the sexual acts recounted by the complainant. Both the defendant and Orly testified that the four people in the kitchen had only sandwiches and soft drinks before Orly and the defendant retired for the evening.

The next day, Sunday, May 22, all parties agree that the defendant drove Orly and the complainant to the beach. The complainant's father picked him up and took him home at around five or six o'clock. On the evening of May 22, the complainant told his father and the Scarborough police his version of what occurred at the defendant's condominium in the early morning hours of May 22.

At 12:40 a.m. of May 23, approximately 20 hours after the alleged incident, Dr. Richard Chandler examined the complainant at the Maine Medical Center in response to his complaint that he had been sexually assaulted. The complainant gave samples of blood and urine as well as rectal swabs. Late in the afternoon of May 23, the police searched the defendant's condominium. The police seized, among other things, a bag of marijuana and a jar of petroleum jelly. The police found some hairs in the jar. Scientific analysis of the various items of physical evidence gathered by the State produced the following results: the rectal swabs contained no traces of sperm or petroleum jelly, the blood sample contained no alcohol, the urine sample contained no traces of metabolite of marijuana, hairs removed from the jar exhibited the same microscopic characteristics as hairs in a sample taken from the complainant, and the substance seized from the defendant's condominium was in fact marijuana.

On June 9, 1983 a Cumberland County Grand Jury indicted Samuel Hinds on counts of sexual abuse of a minor and aggravated furnishing of marijuana. The defendant was tried before a jury in the Superior Court, York County. The prosecution's case relied mainly on the testimony of the complainant and testimony by several experts concerning the scientific analysis of the various pieces of physical evidence involved in the case. The defense presented as witnesses the defendant, Samuel Hinds, and Orly. The jury convicted the defendant of both charges.

I. *Sufficiency of the Evidence.*

 "Evidence is legally sufficient when a trier of fact, resolving all discrepancies in the evidence in favor of the State, rationally could find the essential elements of the offense charge[d] beyond a reasonable doubt." *State v. Hebert,* 480 A.2d 742, 746 (Me.1984); *see State v. Brown,* 479 A.2d 1317, 1318 (Me.1984). A victim's

---

**1.** Keith Bennett was a co-defendant with Hinds in the Superior Court.

uncorroborated testimony may support a conviction provided such testimony is not contradictory, unreasonable or incredible. *Brown*, 479 A.2d at 1318; *State v. Parker*, 461 A.2d 501, 503 (Me.1983). It is the province of the jury to assess credibility and to weigh conflicting testimony in determining the guilt or innocence of the defendant. *Brown*, 479 A.2d at 1318; *see State v. Mahaney*, 437 A.2d 613, 621 (Me.1981).

■ The defendant contends that, because of the equivocal nature of the physical evidence presented by the prosecution, the sole basis for the defendant's convictions was the testimony of the complainant. The defendant argues that this testimony was confused, inconsistent and contradictory. Accordingly, the defendant concludes, the jury could not rationally have convicted the defendant on the evidence presented in this case.

Certainly the testimony of the complainant was vital to the State's case; without it, the defendant's convictions could not stand. The only significant inconsistencies and contradictions, however, are between this testimony and *other testimony* presented at trial. The complainant's trial testimony itself presented a coherent version of what happened in the early morning hours of May 22, 1983. "[It] was neither self-contradictory, unreasonable, nor inherently incredible." *Parker*, 461 A.2d at 503. Accordingly, it was for the jury to weigh this testimony in light of other, inconsistent testimony and to choose which evidence to believe. *See id.* The evidence against the defendant was legally sufficient to convict him for each of the offenses charged.

## II. *Prosecutorial Misconduct.*

### A. *Cross-examination of Orly.*

■ As part of its obligation to ensure a fair trial for the defendant, the prosecution must avoid eliciting inadmissible testimony. *State v. Gaudette*, 431 A.2d 31, 34 (Me. 1981). The failure of the prosecutor to observe this duty is improper prosecutorial conduct. *See id.* at 34–35; *State v. Thornton*, 414 A.2d 229, 235 & n. 5 (Me.1980). Such misconduct may be sufficient grounds for a mistrial. *See Gaudette*, 431 A.2d at 34–35; *State v. Edwards*, 412 A.2d 983, 987 & n. 3 (Me.1980).

■ In deciding whether an improper line of questioning requires a mistrial, however, a trial judge has broad discretion. *See State v. Hilton*, 431 A.2d 1296, 1302 (Me.1981); *State v. Butts*, 372 A.2d 1041, 1042 (Me.1977). Unless "there are exceptionally prejudicial circumstances or prosecutorial bad faith," a less drastic measure, such as a curative instruction, will suffice to preserve a fair trial for the defendant. *See Hilton*, 431 A.2d at 1302; *Thornton*, 414 A.2d at 235. Moreover, where the defendant at trial fails to move for a mistrial or argue that the prejudicial effect upon the jury is irreparable, he "must be taken to have acquiesced" in whatever measures the trial judge takes on his own. *See State v. Conner*, 434 A.2d 509, 511 (Me.1981); *State v. Brown*, 410 A.2d 1033, 1037 (Me. 1980). In such a case, this Court will vacate a conviction on appeal only for obvious error affecting substantial rights. *See Conner*, 434 A.2d at 511; *Gaudette*, 431 A.2d at 33, 35; M.R.Crim.P. 52(b).

In the case at bar, the prosecutor, while cross-examining the defense witness Orly, inquired about how Orly and the defendant had first met in Puerto Rico. The attorney for the defendant requested a conference at side-bar where he objected to the prosecution's line of questioning, arguing that the prosecution intended to explore the defendant's sexual preference. Before trial, in response to a motion in limine by the defendant, the presiding justice had prohibited the prosecution from exploring at trial the issue of whether the defendant was a homosexual.[2] At side-bar the prosecutor frankly stated that he intended "to ask [Orly] ... if he has or had a sexual relationship with Mr. Hinds." (R. at 223). The

---

**2.** The Superior Court had also stated that this prohibition would be waived if the defendant attempted to show at trial that he was in fact a heterosexual. *See* M.R.Evid. 404(a)(1).

prosecutor maintained that such evidence was probative of bias on the part of Orly. The presiding justice told the prosecutor that he was free to explore the witness' bias but warned him, "I don't want you going into details of meeting, and I don't want you to go—don't go anywhere near any sexual thing." (R. at 227). The defendant contends that after resuming cross-examination the prosecutor continued the same prejudicial line of questioning forbidden by the presiding justice, thereby denying the defendant a fair trial.[3]

During the cross-examination that the defendant now challenges, the defendant asserted only a single objection, which the presiding justice sustained. The defendant did not move for a mistrial, request a curative instruction or otherwise protest that the prosecutor's cross-examination of Orly

had denied him a fair trial. The defendant therefore "must be taken to have acquiesced" to the trial court's handling of the situation and this Court will reverse his convictions only for obvious error affecting substantial rights. *Conner*, 434 A.2d at 511; *see* M.R.Crim.P. 52(b).

■ The prosecutor's cross-examination of Orly does not reach the level of obvious error affecting substantial rights. There was no significant prejudice to the defendant; a juror would not rationally infer that the defendant was a homosexual from the challenged cross-examination. Furthermore, the cross-examination of Orly fell short of prosecutorial bad faith. Although the prosecutor might have better heeded the presiding justice's instructions not to explore the initial meeting between

---

**3.** The cross-examination that the defendant argues denied him a fair trial consisted of the following exchange: (cross-examination of Orly by prosecutor)

Q Do you know what day of the week it was when you met Mr. Hinds at the bus station?
A It was like a Thursday.
Q Were you attending a school at that time"
A Yes.
Q And how come you—Was it in the morning, afternoon, or evening that you met him?
A The evening. The evening.
Q In the evening?
A Yeah.
Q What were you doing at the bus station at that time?
A I was waiting for a bunch of friends of mine that were coming from Caguas to pick me up to go to the other part of the island to a rock concert, a supper and rock concert at the same time.
Q Did they come?
A No, they didn't come pick me up.
Q Where did you go from there?
A Excuse me?
Q Where did you go from there?
Defense Counsel: Your Honor, I object. I thought we went over this at side bar.
THE COURT: Yeah, it's sustained.
Q Did you leave there with Mr. Hinds?
A We talked for around half-an-hour; and then after that I asked him if, you know, if he wanted somebody to show him around the island.
Q All right. Did you then show him around the island?
A Not that same night, but the next day we got together, and I showed him around.

Q And where did you go with him the next day?
A The next day?
Q Yeah. Did you go sight-seeing with him?
A Yeah, we went to San Juan, the rain forest.
Q Should you have been in school that day?
A No, I shouldn't.
Q You didn't have classes that day?
A No, I didn't.
Q How many days a week did you go to school?
A Anytime.
Q You went or not as you felt like it?
A Yeah, exactly.
Q School was in session on the day you skipped school to show Mr. Hinds the island?
A No.
Q You did not skip school?
A No, I did not skip school. But I am just telling you that you go to school there if you want to; if you don't want to, you don't.
Q You didn't go to school that next day?
A No.
Q Did you go to school again during the time Mr. Hinds was on the island?
A No, I did not.
Q And did you act as a guide for Mr. Hinds during that time?
A Yes, I did.
Q And how many days was he there?
A For a couple weeks. I don't know exactly. You know, I can't tell you exactly how many hours a day he was there.
Q Did he pay you to act as his guide?
A No, he didn't.

Orly and the defendant, the cross-examination in question was sufficiently directed at the possible bias of the witness and therefore legitimate. In the absence of exceptional prejudice or prosecutorial bad faith, a trial court is under no obligation to declare a mistrial. *See Hilton,* 431 A.2d at 1302; *Thornton,* 414 A.2d at 235. Accordingly, we cannot say in this case that the prosecution's cross-examination of Orly denied the defendant a fair trial.

### B. *Closing Argument.*

▆▆▆▆ In arguing the State's case to the jury, a prosecutor may use "wit, satire, invective and imaginative illustration." *State v. Pineau,* 463 A.2d 779, 780 (Me. 1983). Nevertheless, "the prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the prevailing law." *Id.* at 781 (quoting A.B.A. Standards Relating to the Prosecution Function § 5.8(d) (1971)). The prosecutor must limit his argument to the facts in evidence. *See id.* He must avoid prejudicial misstatements of the law. *See State v. Bahre,* 456 A.2d 860, 863–65 (Me.1983). Further, the prosecutor must not demean legitimate defenses available under the law. *See State v. McDonald,* 472 A.2d 424, 425–26 (Me.1984).

▆▆▆▆ Improper argument may be so prejudicial as to deny the defendant a fair trial. *See Bahre,* 456 A.2d at 865; *State v. Smith,* 456 A.2d 16, 17–19 (Me.1983). Each case, however, must be examined on its own facts. *State v. Dana,* 406 A.2d 83, 88 (Me.1979). A remedial measure less drastic than ordering a mistrial, such as a curative instruction, may be sufficient to preserve a fair trial for the defendant. *See State v. Conner,* 434 A.2d 509, 511–12 (Me. 1981). Furthermore, under the "well settled rule," the defendant must object to

improper argument at the time it is made to the jury "so that the presiding justice may set the matter right and instruct [the jury] in relation thereto;" otherwise, the point is not preserved. *Werner v. Lane,* 393 A.2d 1329, 1333–34 n. 3 (Me.1978). When the defendant fails to assert a timely objection, "the alleged impropriety constitutes a basis for vacating the criminal judgment only if it is obvious and worked a manifest injustice upon [the] defendant." [4] *State v. Spearin,* 463 A.2d 727, 731 (Me. 1983); *see* M.R.Crim.P. 52(b).

In the case at bar, the defendant alleges several different instances of improper conduct by the prosecutor during closing argument and contends that these improprieties denied him a fair trial. The defendant did not move for a mistrial or otherwise object to any of these alleged improprieties at trial. Accordingly, they will justify vacating his convictions only if they constitute obvious error which worked a manifest injustice upon the defendant. *See Spearin,* 463 A.2d at 731; *State v. Terrio,* 442 A.2d 537, 543 (Me.1982).

▆▆▆▆ First, the defendant refers to several remarks made by the prosecutor during his closing statement and contends that they were either prejudicial to the defendant or demeaning to the court proceedings and thereby denied the defendant a fair trial. Specifically, the defendant complains that the prosecutor referred to the charges against the defendant as "nasty stuff," that he characterized defense witness Orly as "a very street-smart, intelligent, good-looking young man," and that he called the prosecution of the defendant "this kind of show." The defendant asserts that through these remarks the prosecutor alluded to the defendant and Orly as homosexuals and inflamed and unfairly prejudiced the jury against the defendant.

---

4. The failure to object to allegedly improper argument is not always inadvertent. "For whatever reason, a defendant may choose for tactical purposes to seek a verdict from the jury rather than accepting a mistrial and possible new tri-

al." *State v. Terrio,* 442 A.2d 537, 543 (Me. 1982). In such a case, the standard for reversing a conviction on appeal based upon the allegedly improper argument is still obvious error. *Id.*

All of these comments are susceptible to more than one interpretation. Indeed, a juror, considering these remarks in the context of the prosecutor's complete closing statement, could rationally view them as proper references to the credibility of Orly as a defense witness and of the complainant as a witness going through the ordeal of testifying as the victim of a sex-related crime. "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *State v. Gordon*, 321 A.2d 352, 364 (Me.1974) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974)). It is not at all obvious that these statements denied the defendant a fair trial.

 Second, the defendant contends that the prosecutor impaired his right to a fair trial by misstating the law concerning the burden of proof incumbent upon the State. The defendant complains that the prosecutor told the jury that, if they believed the complainant's testimony, they should convict the defendant of the two charges, but, if they did not believe that testimony, they should find the defendant not guilty in both instances. The defendant argues that this statement oversimplified the jury's duty and obscured the fact that the State had to prove each element of both crimes beyond a reasonable doubt.

The remarks seized upon by the defendant were merely a comment upon the indisputable fact that the credibility of the complainant was a crucial issue in this case. The prosecutor correctly stated the reasonable doubt standard elsewhere in his argument. More importantly, the presiding justice fully and adequately instructed the jury on the duty of the State to prove each element of both crimes beyond a reasonable doubt as well as on the proper role of witness credibility in this case. Again, it is far from obvious that this comment deprived the defendant of a fair trial.

Finally, the defendant contends that the prosecutor demeaned a legitimate defense during his closing statement. At trial, in addition to completely denying that he gave marijuana to or had sexual contact with the complainant, the defendant attempted to establish as a defense to the sexual abuse of a minor charge the fact that at the time of the alleged sexual misconduct he reasonably believed that the complainant was over sixteen years of age.[5] In argument, the prosecutor commented that the defendant was contending that on the one hand he had no sexual contact with the complainant but on the other hand, even if he did, he reasonably believed that the complainant was over sixteen years old at the time. The prosecutor further argued that, because this reasonable belief defense would not apply to the charge of furnishing drugs to a minor, the defendant had to deny the entire incident as testified to by the complainant. The defendant argues that the prosecutor demeaned the legitimate defense provided in 17–A M.R.S.A. § 254(2) (1983) by asserting to the jury that the defendant could not reasonably raise it in these circumstances, thereby denying the defendant a fair trial.

 The prosecutor did not denigrate the defense itself but rather attempted to point out its limitations as well as the fair inferences the jury could draw from the defendant's raising it in this case. The prosecutor is free to attack the sufficiency of the evidence supporting a defense. *See McDonald*, 472 A.2d at 425–26. Moreover, the prosecutor may attack the defendant's credibility during argument by emphasizing "with vigor and zeal" absurdities and inconsistencies in the case presented by the defendant. *See Smith*, 456 A.2d at 17. It was not improper for the prosecutor to argue an inference of inconsistency from

---

5. "It is a defense to a prosecution [for sexual abuse of a minor] that the actor reasonably believed the other person to have attained his sixteenth birthday." 17–A M.R.S.A. § 254(2) (1983).

the fact that the defendant both completely denied furnishing drugs or having sexual contact with the complainant and raised the defense to the sexual abuse charge against him that "the actor reasonably believed the other person to have attained his sixteenth birthday," 17–A M.R.S.A. § 254(2) (1983).[6] It is not obvious that these remarks denied the defendant a fair trial.

In summary, all of the portions of the prosecutor's summation challenged by the defendant, even when considered together with the prosecutor's cross-examination of Orly, did not obviously impair the defendant's right to a fair trial. There was no manifest injustice in the proceeding below.

The entry is:

Judgments affirmed.

All concurring.

---

**6.** We note that the presiding justice completely and adequately instructed the jury on the legitimacy of the defense provided in 17–A M.R.S.A. § 254(2) (1983).

We also observe that the defendant did not seek to sever for trial the charges of furnishing drugs and sexual abuse. *See* M.R.Crim.P. 14. Separate trials on the two charges would have eliminated any inconsistency in the defendant's trial strategy caused by the inapplicability of the "reasonable belief" defense to the furnishing drugs charge.