STATE of Maine

v.

**Frederick TOMAH.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1991.
Decided Feb. 28, 1991.

Neale T. Adams, Dist. Atty., Sara Burlock, Caribou, Asst. Dist. Atty., Wayne Moss (orally), Asst. Atty. Gen., Augusta, for the State.

David Soucy (orally), Plourde & Soucy, Fort Kent, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD and BRODY, JJ.

WATHEN, Justice.

Defendant Frederick Tomah appeals from his conviction of burglary, 17–A M.R.S.A. § 401 (1983), and theft, 17–A M.R.S.A. § 353 (1983), following a jury trial in Superior Court (Aroostook County, *Pierson, J.*). First, he claims error in the court's denial of his motion to suppress evidence obtained as a result of a search of his car conducted pursuant to a defective warrant. Next, he contends that comments made by the prosecutor in closing argument were improper and deprived him of a fair trial. We affirm the judgments of conviction.

Ken's Store, in Houlton, was burglarized and robbed on April 21, 1988 between mid-

night and 4:00 A.M. The perpetrator entered through boards in the back of the store and broke into the safe. Money bags containing $2685.00 of United States and Canadian currency were taken or emptied. Feathers from a down jacket were found at the point of illegal entry and money bags and cartons of Winston cigarettes were found in a field near the store. Suspicion focused on defendant when a trained tracking dog followed a scent from the scene to the apartment house where defendant lived. Additionally, defendant had been sighted twice by a police officer on the night of the crime near the scene, the latter time with a noticeable bulge in his pocket.

Defendant was arrested in his apartment two days after the burglary. Before going to the police station, defendant locked his car and put the keys in the mailbox. While at the station, he called his girlfriend and told her to get his car, drive it to her house and not let anyone have access to it. She moved the car to the street in front of her apartment. The police subsequently obtained a search warrant for defendant's car. They showed the warrant to defendant's girlfriend and she gave them the keys. The car was searched and a number of items were recovered. Among these items was a down filled jacket, plainly visible in the car, which was consistent with the description of the coat worn by defendant when he was sighted by police near the scene of the crime, with feathers that matched the ones found at the scene and with tears that were consistent with the method of entry. Sales slips from purchases made on the day after the crime, gloves, muddy Adidas sneakers, a survival knife, $33.00 in Canadian money, an empty Winston carton, and a Beef Stick plastic jar were also found in the car.

Defendant moved to suppress the evidence, claiming that the search warrant was defective. The State conceded that the warrant was defective but argued that the search was valid under the automobile exception because probable cause and exigent circumstances existed at the time. The Superior Court agreed and denied the motion.

At trial, the State introduced the evidence found at the scene and in the car, the dog tracking results, and evidence that, even though defendant was unemployed, on the day after the crime he had taken a whirlwind trip to Connecticut buying four new tires and liquor on the way. Defendant testified that the police saw him on the night of the crime when he was heading home from his girlfriend's house after 1:00 A.M. He stated that he left town immediately after the sighting to visit a service buddy, whose name he could not remember. He further testified that the money he spent came from his sister. Defendant's girlfriend testified that he left her apartment sometime after 12:30 A.M. and a tire salesman in Augusta testified that he replaced defendant's tires between 7:00 A.M. and 8:00 A.M. on the morning after the crime.

▮▮▮▮ Defendant first challenges the denial of his motion to suppress. Admittedly, the warrant was defective. The Superior Court treated the search as a warrantless search, valid under the automobile exception because the police officers had probable cause and there were sufficient exigent circumstances. Defendant argues that the automobile exception does not apply because there was no exigency and, since the warrant was defective, the fruits of the search should have been suppressed. Federal law does not require a finding of exigent circumstances before searching a motor vehicle. Because these officers could have searched defendant's vehicle without a warrant, they should not be penalized because they attempted to get a warrant.

▮▮▮▮ "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406 (1985). As a matter of federal constitutional law, a warrantless search is *per se* unreasonable unless it is supported by probable cause and

exigent circumstances exist requiring a prompt search without the delay occasioned by the need for a warrant or unless the search falls into one of the recognized exceptions to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The automobile exception is one such exception. *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). At one time, a warrantless search of a vehicle was valid only if the searching officers had probable cause to believe that it contained contraband or evidence and exigent circumstances existed preventing the officers from getting a warrant in time to prevent "the removal, concealment, destruction or other loss" of the articles to be seized. *See, generally, Coolidge v. New Hampshire,* 403 U.S. 443, 458–464, 91 S.Ct. 2022, 2033–37, 29 L.Ed.2d 564 (1971). But the requirement of finding a special exigency has slowly eroded. *See Carney,* 471 U.S. at 386, 105 S.Ct. at 2066; *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982). Today, the inherent mobility of a motor vehicle coupled with the reduced expectation of privacy associated with it justifies the warrantless search of that vehicle so long as the search is supported by probable cause. *See State v. Tarantino,* 587 A.2d 1095, 1098 (Me.1991); *United States v. Panitz,* 907 F.2d 1267, 1271 (1st Cir.1990).

■ In this case, at the time the officers arrested defendant, they had probable cause to search the car. Probable cause is present if all the facts and circumstances would lead a reasonably prudent person to believe that contraband or evidence of a crime are located in the place to be searched. *See Carroll,* 267 U.S. at 149, 45 S.Ct. at 283; *United States v. Ross,* 456 U.S. 798, 808, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982). A reasonably prudent person could believe that since defendant had disappeared in his car immediately after the crime and had come back in his car immediately before his arrest, evidence of the crime would be in the car. Moreover, a ripped down jacket was in plain view. Because probable cause existed and the place to be searched was inherently mobile, the

warrantless search of the vehicle was reasonable.

■ Because the police officers could have searched without a warrant, the fact that they waited until they procured one is irrelevant. The exclusionary rule was designed to take away the advantage gained by police misconduct. *See United States v. Silvestri,* 787 F.2d 736, 740 (1st Cir.1986); *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984); *United States v. Galante,* 547 F.2d 733, 740 (2nd Cir.1976). It was not designed to place the state in a weaker position than it would have been had the misconduct not occurred. *Nix,* 467 U.S. at 443, 104 S.Ct. at 2508. Police officers should not be punished for trying to comply with Fourth Amendment requirements in those situations where, as here, they could have conducted a warrantless search in the first instance. Next, defendant contends that the prosecutor's closing argument was so inundated with expressions of personal opinion that it was improper. Because the evidence of guilt was circumstantial and the case turned on the jury's assessment of defendant's credibility, defendant asserts that he was deprived of a fair trial. Defendant did not object to the prosecutor's comments at trial nor did he move for a mistrial. "When the defendant fails to assert a timely objection, 'the alleged impropriety constitutes a basis for vacating the criminal judgment only if it is obvious and worked a manifest injustice upon [the] defendant.'" *State v. Hinds,* 485 A.2d 231, 237 (Me.1984) (quoting *State v. Spearin,* 463 A.2d 727, 731 (Me.1983)); *see* M.R. Crim.P. 52(b); *State v. True,* 438 A.2d 460, 467 (Me.1981).

In his closing statements, the prosecutor told the jury that he believed the police testified professionally, that he thought the tracking dog did a good job, that people just do not forget the names of people they were in the service with, that he thought his questioning had stretched defendant's credibility to the breaking point and that if you sit on a jury for 20 years, you'll never see a more rock solid case. Although there was reason to doubt defendant's testimony,

the prosecutor's argument went beyond merely highlighting the facts in evidence and could have diverted the jury's attention from its fact finding mission. *See State v. Reilly,* 446 A.2d 1125, 1128 (Me.1982) (a prosecutor has a duty to see that the accused gets a fair trial); *State v. Hinds,* 485 A.2d 231, 237 (Me.1981) (prosecutor must limit argument to facts in evidence). Although the prosecutor erred, on the record before us we are not persuaded that the error produced manifest injustice. *See State v. True,* 438 A.2d at 467 (Me.1981).

The entry is:

Judgments affirmed.

All concurring.