[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM RE: MOTIONS FOR CONTEMPT, ALIMONY SUPPORT PENDENTE LITE AND ORDER TO COMPEL DNA TEST
This is an action for dissolution that was commenced by complaint dated December 29, 1998. The defendant husband was served by personal service in the hands of his attorney who accepted service on his behalf of the writ summons and complaint, which included the Notice of Automatic Orders on January 7, 1999. This case has yet to be assigned for a final hearing, and although there has been some resolution of various pretrial motions, there have been no temporary orders as to alimony and support. By agreement, the parties share joint legal custody of the minor children with primary residence with the plaintiff mother. The issues to be resolved before the undersigned are pendente lite support and alimony, a motion for contempt and a motion to order DNA testing.
There are three children, Amy, Christopher and Daniel, issue of this twelve year marriage. Prior to Thanksgiving 1998, the parties and their three children lived at Charcoal Ridge in Middlebury, CT. The plaintiff wife and the children still reside at that residence in Middlebury. The husband moved from the marital home sometime after Thanksgiving 1998, and now resides in a duplex type residence in Southbury. After the parties separated, the husband continued to pay all of the household expenses, and in addition, paid the wife about $1,000.00 per week. These payments stopped in May of 1999. In September of 1999, husband gave wife $12,500.00, which she has been using for her support and the support of the minor children.
Mr. Errichetti is a civil engineer, has a law degree and is a member of this Bar. He has been associated with his family's business for the past twenty years. The business founded by the defendant's father, John Errichetti, is primarily centered in real estate development. In 1993, the business experienced some financial difficulties, and after that date his efforts have been devoted to "work outs". The business has not been forced into bankruptcy. The plaintiff testified that since 1993, he has been self employed and works side by side with his father in the business. He has reported income from business investments he has made and from monies he has in his own name. His financial affidavit dated January 3, 2000, which the court will consider in CT Page 1190 this ruling, shows net weekly earning from interest income and director's fees of $1,623.00 gross and $1,220.00 net. He also shows business assets, held in his name, that he claims has a value of $1,563,364.00. In addition to these business assets, the defendant shows equity in a home in Wilmington, Vermont, miscellaneous bank accounts, stocks, bonds and an IRA for an additional amount of $406,356.00, or a total of all his assets of $1,971,916.00.
The wife was employed as a school teacher but left her teaching position in 1997. She is not employed and has no income. Her financial affidavit dated January 3, 2000, shows net assets of about $112,500.00.
In addition to the claim made by the wife for alimony and support pendent lite, the plaintiff claims that the defendant is in contempt of the Automatic Orders. She points to the affidavit filed by the defendant dated June 3, 1999 (Plaintiff's Exhibit 3), which shows bank accounts totaling $275,000.00, and the affidavit filed by him on January 3, 2000, which shows bank accounts in the amount of $85,000.00 for a decrease of $190,000.00.
Finally, the plaintiff seeks to have the defendant submit to a DNA test. The defendant testified that about twenty six years ago he had a relationship with an Ann Wynne that resulted in the birth of a child whose name at the present time is Patty Blanchette. Ms. Wynne has testified that at the time of birth of the child she named the defendant as the child's father. The father became aware of the birth of the child, but he did not meet the child until sometimes in 1995. The child was given up for adoption after her birth. She is now 25 years old and lives in Massachusetts. The plaintiff testified that before the institution of this action the defendant questioned his paternity. The defendant testified that he is certain he is the father. Apparently the question of whether Patty is the half sister of the parties' minor children now has become a psychological issue with at least one of the children of this marriage. The plaintiff has filed a motion pendente lite that DNA testing be performed to determine whether Patricia Blanchette is the biological child of the defendant.
A. Support and Alimony Pendente Lite
The court will first consider the motion for support and alimony pendente lite. The court's authority to award alimony and CT Page 1191 support pendente lite is provided in General Statutes §§46b-82, § 46b-83 and § 46b-84. "The purpose of an award of alimony and support pendente lite is to provide for the wife and the dependent children while they are living apart from the husband pending a determination of the issues in the case." (Internal quotation marks omitted.) Wolk v. Wolk, 191 Conn. 328,331, 463 A.2d 780 (1983); England v. England, 138 Conn. 410, 414,85 A.2d 483 (1951); Wilkens v. Wilkens, 10 Conn. App. 576, 578,523 A.2d 1371 (1987). The court then must take into account the estate of the husband, his income and the other factors enumerated in the relevant statutes mentioned above.
The husband's financial holdings are substantial. His business and real estate investments are difficult to evaluate because of the lack of independent evaluations, and it is impossible to determine what income was generated from each of them to which the plaintiff may be entitled. It is also unclear what his ownership interests of his holdings are with respect to his other family members. All of this information will be available at the final hearing when final and permanent orders will be made.
There was sufficient evidence presented before this court as to the defendant's finances, his earnings and his financial life style. His reported income for the years 1997 and 1998 were $2,718,325.00 and $771,892.00. In addition, based on only his affidavit, which does not show market value of his real estate holdings, he values his assets on his current financial affidavit at close to $2,000,000.00. The defendant, on his current affidavit, estimates his gross income at about $84,000.00, yet he is paying quarterly estimated IRS payments of $15,228.00, which was shown on Defendant's Exhibit I. This income reported on his current financial affidavit is solely generated from his current investments and director's fees. At the present time he is not engaged in full-time or gainful employment. He does not seem to have any trouble supporting a rather upscale life style. In 1998, he purchased a vacation home in Vermont and has been paying all of the expenses of that home as well as the family home and the residence that he recently leased for himself at a monthly rental of $1,800.00. (Plaintiff's Exhibit 8). He testified that last year he took a 10 day vacation to London, Belgium and the Netherlands with Ms. Wynn that he estimated cost him $4,000.00. He charged $25,000.00 to his American Express account in a five month period in 1999. There is no question, based on the defendant's estate, that he can afford to support his wife and children while they are living apart from him and in CT Page 1192 the manner that they have been living. There was no evidence presented at the hearing before the undersigned that questioned the weekly expenses the wife estimated on her financial affidavit. In the memorandum filed in connection with these motions the defendant's attorney does question some of plaintiff's expenses as to vacation, entertainment, housekeeper and personal care as amounts to be "attributed to the new high life that the plaintiff wants to continue living." (Defendant's Memorandum dated January 14, 2000, pg. 8). This characterization of the wife's life style seems to be somewhat disingenuous given the evidence of the husbands expenditures and life style. The wife's request of $230 per week for vacations for herself and three children is certainly less than the $4,000.00 the husband spent on himself for his vacation. ($11,960.00 per annum ÷ 4 = 2,990.00). If the husband can afford vacations for himself he can afford to provide the same for his family. The court cannot find that the expenses, as shown on the plaintiff's financial affidavit, are unreasonable or unnecessary.
The parties agreed at the close of the hearing that the order of alimony and support should be unallocated. Although counsel for the minor child presents valid arguments from a tax standpoint against this kind of allocation, the court will accede to the wishes of the parties who will ultimately be responsible for paying the taxes. I will also permit the defendant to continue to pay as he has the residential mortgage, the school tuition, homeowner's insurance, car insurance, costs of the children's camp and activities, and the costs of any health insurance for the family. If the defendant voluntarily continues to pay the expenses of the vacation home in Vermont he is ordered to permit equal access to that home to his wife and children. The court does not however value these expenses to be $2,013.00, as the defendant notes in his memorandum on page 7. The court has added all of the expenses as shown on the plaintiff's current affidavit noted with an asterisk and it totals $611.00.[1] This amount deducted from her total weekly expenses is $2,100.00. Having considered all of the criteria set forth in General Statutes §§ 46b-82, 46b-83, and § 46b-84, the court will order that the husband pay to the wife as alimony and support pendente lite the sum of $2,100.00 per week to commence immediately. This is the amount that the plaintiff will need to meet her expenses, and this is what the court will order as unallocated alimony and support. Furthermore, the plaintiff has asked for an amount that she will need for federal and state taxes since the unallocated award is taxable to the plaintiff CT Page 1193 When this amount is determined, it will not be due until April, 2001. The court will order that the husband pay as an additional amount as a lump sum payment a sum equal to the plaintiff's federal and state taxes. This payment shall be due within thirty days after the tax liability is communicated to the husband and his attorney in writing.
B. Contempt
There is no question that the defendant withdrew $190,000.00 from his bank accounts since June 3, 1999, when he reported he had a balance of $275,000.00. Whether this was a violation of the Automatic Orders of this court pursuant to Practice Book § 25-5(1) will depend on the determination of whether any of the withdrawals were made in the ordinary course of business or for the customary and usual household expenses. It would seem that there were transfers to the businesses and whether those transfers were made in the ordinary course of business cannot be determined. According to Defendant's Exhibit H from the period March 3, 1999, to November 18, 1999, the defendant made personal withdrawals of $113,500.00. It does not seem that these withdrawals were all made for "customary and usual household expenses." Upon the evidence presented, however, this court can not make that determination. The court will make those findings at the time of the final hearing There was insufficient evidence presented for the court to make a finding of willful contempt. The court will deny this Motion for Contempt without prejudice.
C. Motion for DNA Testing
The plaintiff and counsel for the minor child, Amy Marie, seek that the defendant undergo DNA testing to establish his paternity of Patricia Blanchette. The parties did agree by a stipulated agreement filed with this court dated June 7, 1999 that they would refer to a mental health expert, the question of how the children should be introduced to the defendants daughter from before this marriage. That apparently was done and the expert so retained, Janice Phillips, gave testimony at the hearing before the undersigned. It was Dr. Phillips recommendation that it would be in the best interest of Amy that the paternity of the defendant be verified with respect to Patty Blanchette. There was no evidence presented that Ms Blanchette would agree to be tested or that she was asked to participate in such a test. Obviously, without her participation the test of the defendant would be of no value. Although the court does feel it is within its powers to order that the CT Page 1194 defendant submit to this testing, it will not consider this request unless it is assured that Ms. Blanchette is willing to participate. The Motion for Order Pendente Lite dated December 8, 1999 for DNA testing therefore is denied without prejudice.
The court will order that the defendant pay the following household expenses as they become due: the mortgage payment and real estate taxes on the family home located at Charcoal Ridge in Middlebury, Connecticut, all medical and dental insurance for the benefit of the wife and minor children, automobile insurance, homeowner's insurance, tuition payments and Summer Camp payment on behalf of the minor children. The court will further order the defendant to pay to the plaintiff the sum of $2,100.00 per week as unallocated alimony and support pendente lite to commence immediately.
PELLEGRINO, J.